## COMMONWEALTH *vs.* FLOYD HAMILTON.

Suffolk. November 5, 1991. - December 5, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Jury and Jurors. Practice, Criminal,* Challenge of jurors, Verdict, Instructions to jury. *Constitutional Law,* Jury, Waiver of constitutional rights, Admissions and confessions, Confrontation of witnesses. *Waiver. Evidence,* Relevancy and materiality, Consciousness of guilt. *Joint Enterprise. Felony-Murder Rule.*

At a criminal trial the prosecutor advanced persuasive neutral reasons to support his peremptory challenges of two prospective black jurors and the defendant demonstrated no prejudice caused by the judge's actions during jury selection that were intended to ensure that the defendant had a representative jury. [316-318]

The judge at a criminal trial applied the appropriate standard in determining whether certain statements of the defendant were voluntarily made. [318-319]

At a hearing on a motion to suppress certain statements of a criminal defendant the judge properly assessed the credibility of the testifying witnesses. [320]

No substantial likelihood of a miscarriage of justice was demonstrated by insubstantial inconsistencies in prosecution witnesses' testimony at a criminal trial, which the defendant alleged for the first time on appeal amounted to a violation of his constitutional rights. [320-321]

Where a criminal defendant successfully moved to suppress a tape recording of his interrogation by police, and later offered the recording in evidence at his trial after acknowledging that he was thereby waiving his right to have it suppressed, the defendant was not entitled to have objectionable portions of the recording excised, and, in the circumstances, the entire recording was admissible under the "verbal completeness" doctrine. [321-322]

At a murder trial the judge properly allowed in evidence a gun the defendant was carrying at the time of his arrest four months after the murder for the limited purpose of showing that the defendant had the means to commit the offense charged. [322]

At a criminal trial, evidence of the defendant's arrest created no substantial risk of a miscarriage of justice. [323]

The evidence at a criminal trial warranted the jury's verdicts of murder in the first degree on a theory of either deliberate premeditation or felony-murder, and armed robbery, and the jury's having found the defendant not guilty on an indictment charging carrying a shotgun did not render the guilty verdicts erroneous. [323-324]

At a murder trial, the judge's instructions to the jury on the defendant's theory of defense, on joint venture felony-murder, on consciousness of guilt, and on reasonable doubt were without error. [324-327]

INDICTMENTS found and returned in the Superior Court Department on August 15, 1984.

A pretrial motion to suppress evidence was heard by *James P. Donohue,* J., and the cases were tried before *William H. Welch,* J.

*Kevin P. Curry* for the defendant.

*Nijole Makaitis,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant appeals from his convictions of murder in the first degree and armed robbery.[1] The defendant argues that (1) his right to an impartial jury was violated by the prosecution's improper exercise of peremptory challenges, as well as the trial judge's allegedly unconstitutional remedy for that improper exercise; (2) the judge erred in concluding that the defendant waived his right to remain silent and his right to counsel before answering certain questions of police officers; (3) the judge erred in refusing to excise portions of a tape recording of his interrogation which the defendant introduced in evidence; (4) the judge erred in admitting evidence of the defendant's arrest and the revolver that he was carrying at that time, four months after the crimes; (5) the jury verdict of not guilty on the indictment charging unlawful carrying of a shotgun invalidates the two

---

[1] The jury found the defendant not guilty on an indictment charging unlawful carrying of a shotgun on his person. The defendant's first trial, in which Joseph Pope was a codefendant, ended in a mistrial. Their cases were severed prior to the second trial. Pope was convicted of murder in the first degree and armed robbery, and this court upheld his convictions. *Commonwealth* v. *Pope,* 406 Mass. 581, 582 & n.2 (1990).

guilty verdicts; and (6) the judge's instructions to the jury were constitutionally deficient.[2]

There was evidence that on the evening of May 23, 1984, Bienvenido DeJesus (DeJesus), the brother of the murder victim, Efrain DeJesus (victim), met Joseph Pope outside of DeJesus's home where he resided with his wife, their two children, and the victim. After Pope asked DeJesus whether the victim was at home, DeJesus entered his home and told the victim that Pope was asking for him. While DeJesus went into the upstairs bathroom to bathe his two children, the victim left the house. DeJesus observed the victim, Pope, and the defendant pass by the open bathroom door on their way to the victim's room. A few moments later, DeJesus noticed that the same three men moved past the bathroom to a small room from which the victim occasionally sold cocaine.

DeJesus then heard the footsteps of more than one person going downstairs. About a minute after that, he heard the victim yell out, "Oh no, not this. You are going to have to shoot," and then he heard sounds of a shuffle, a gunshot, and his brother yell out, "Compe." As DeJesus started out of the bathroom, Pope placed a gun at his head and pulled him into the small room. He then demanded that DeJesus give him everything that he had. DeJesus complied and placed his money on a table.

The defendant came back up the stairs, knelt on one knee in the hallway, pointed a shotgun at DeJesus, and said to Pope, "Let's go." Pope grabbed the money, and both men then ran down the stairs and out of the house. DeJesus then picked up his crying children and went down the stairs. He saw the victim lying at the bottom of the stairs in a pool of blood. According to the medical examiner, the victim died of a shotgun wound to the heart and the left lung.

---

[2]Although the defendant does not ask this court to exercise its power under G. L. c. 278, § 33E (1990 ed.), to review the entire record, we have, nevertheless, undertaken such a review. See Commonwealth v. Scott, 408 Mass. 811, 812 n.1 (1990). We conclude that there is no reason to exercise our power under § 33E.

1. *The defendant's right to an impartial jury trial.* The defendant is black. He contends that the prosecutor's peremptory challenges violated the Massachusetts and Federal Constitutions, and that the judge's remedy for these violations was also unconstitutional and violated G. L. c. 234, § 26B (1990 ed.). Two of the seven peremptory challenges made by the prosecutor resulted in the exclusion of black jurors. Only one out of the final sixteen members of the jury was black. When the jury were to be reduced to twelve members, the judge, sua sponte, set aside, along with the foreperson's juror card, the juror card of the black juror in order to ensure that he would be a member of the jury and not an alternate.

Both art. 12 of the Massachusetts Declaration of Rights, see *Commonwealth* v. *Soares,* 377 Mass. 461, 486, cert. denied, 444 U.S. 881 (1979), and the equal protection clause of the Fourteenth Amendment to the United States Constitution, see *Batson* v. *Kentucky,* 476 U.S. 79, 89 (1986), prohibit the exercise of peremptory challenges to exclude jurors solely by reason of their race. While there is a presumption of the proper use of peremptory challenges, that presumption is rebuttable on a showing that "(1) a pattern of conduct has developed whereby several prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood they are being excluded from the jury solely by reason of their group membership." *Soares, supra* at 490. See *Batson, supra* at 97 (pattern of exclusion of black jurors is prima facie showing of discrimination). Once the judge determines that the party opposing the peremptory challenges has rebutted the presumption of their proper use, the burden then shifts to the other party to demonstrate neutral reasons for the challenges. *Soares, supra* at 491. *Batson, supra* at 97. That burden, however, does not rise to the level of the grounds required by a challenge for cause. *Soares, supra. Batson, supra.*

In this case, because the prosecution disproportionately excluded sixty-seven per cent of the prospective black jurors and only fourteen per cent of the available whites, the de-

fendant established a prima facie rebuttal of the presumption. See *Soares, supra* at 490 (exclusion of ninety-two per cent of prospective black jurors as contrasted with thirty-four per cent of available whites indicated that blacks were being challenged because of their race). At that point, however, the burden then shifted to the prosecution "to justify the challenge[s] with a persuasive neutral reason unrelated to the defendant's group membership." *Commonwealth* v. *Harris*, 409 Mass. 461, 468 (1991).

The prosecutor advanced persuasive neutral justifications for his two challenges. The prosecutor's basis for challenging the first black juror was that she lived in a neighborhood in which the prosecutor had investigated a multiple homicide. The prosecutor challenged the second black juror because of her demeanor and her inconsistent responses to questions. Each of the prosecutor's bases for his peremptory challenges was a neutral explanation and pertained to the individual qualities of the prospective jurors and not to their group association. See *Soares, supra* at 491 (rationale must pertain to juror's individual qualities); *Batson, supra* at 98 (prosecutor "must articulate a neutral explanation related to the particular case to be tried"). Contrary to the defendant's assertion, the judge's removal of the black juror's card was not indicative of his determination that the prosecution had not met its burden of justification for its challenges, but instead was indicative of his attempt to ensure that the defendant had a representative jury.

The defendant next argues that the removal of the black juror's card was per se prejudicial. Because the defendant found this procedure acceptable at trial and did not object, we review the judge's actions under G. L. c. 278, § 33E (1990 ed.), to determine if there was grave prejudice or a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Stewart*, 398 Mass. 535, 543-544 (1986). The removal of a juror's card from the alternate selection process, while inconsistent with the procedures within G. L. c. 234, § 26B (1990 ed.), is not, by itself, prejudicial. See *Commonwealth* v. *Bellino*, 320 Mass. 635, 638-642 (no prejudice to

defendant in exempting foreman from discharge), cert. denied, 330 U.S. 832 (1947); *Commonwealth* v. *Paiva,* 16 Mass. App. Ct. 561, 564 (1983) (no substance to claim that excluding forelady from alternate jurors' selection was prejudicial to defendant). We believe that, where a defendant fails to object to a procedural defect, as in the present case, then that defendant has the burden of presenting some proof of prejudice. See G. L. c. 234A, § 74 (1990 ed.) (no mistrial for irregularity in juror selection where no objection and no prejudice). That is not the situation here, where the judge's procedure actually improved the representativeness of the jury.

2. *The defendant's waiver of his right to counsel and his right to remain silent.* Cambridge police arrested the defendant on an unrelated matter and notified the Boston police department. The defendant agreed to speak with Boston police officers. After reading the Miranda warnings to the defendant from a printed card, Detective Peter O'Malley questioned him about the victim's murder on May 23, 1984. After the defendant described his activities on that evening for approximately five to ten minutes, he agreed to Detective O'Malley's suggestion that his statement be tape recorded. At the beginning of the recording, Detective O'Malley and the defendant had a discussion about the defendant's right to an attorney and his right to remain silent. At that point, the defendant commented that he had "been waiting to see [an attorney], but one hasn't come down yet," and then he asked, "But I couldn't have one now though?" After the defendant made these remarks, Detective O'Malley continued the interrogation and obtained a complete statement from the defendant.

Although the motion judge ruled that the government did not prove beyond a reasonable doubt that the defendant waived his rights under the Fifth Amendment to the United States Constitution or his right to cut off questioning *after the tape recorder was turned on,* the judge was satisfied that the statements made by the defendant *before the tape recorder was turned on,* after being advised of his Fifth

Amendment rights, were made freely, voluntarily and without a denial of assistance of counsel. The defendant contends that: (1) the judge applied an inadequate standard to the issue of the waiver of his right to counsel, (2) there was insufficient evidence from which to find a waiver, and (3) the testimony at trial proved that the defendant's constitutional rights were violated.

Although the motion judge did not state explicitly that he was convinced beyond a reasonable doubt that the defendant voluntarily made statements prior to the tape recording, the record clearly establishes that he did apply the reasonable doubt standard to these statements.[3] See *Commonwealth* v. *Williams*, 378 Mass. 217, 224 & n.4 (1979) (while judge made no explicit finding of knowing and intelligent waiver, record is clear that judge applied appropriate standard). At the hearing on the defendant's motion to suppress the statements, the motion judge stated, "I have got to make my determination of, were the statements if any, were they made, freely and voluntarily given? Am I convinced of that beyond a reasonable doubt, and if so, I am going to let the statements go to the jury." However, he suppressed the tape recorded portion of the defendant's statement because the government did not convince him beyond a reasonable doubt that the defendant waived his right to an attorney and his right to remain silent. We conclude, therefore, on the basis of the entire record, that the motion judge applied the appropriate standard.

---

[3]The motion judge's ruling of law on this issue is as follows: "With regard to that portion of the defendant's statement made before the tape was turned on, I am satisfied that the defendant answered those questions after having been advised of his Fifth Amendment rights and that he answered those questions freely and voluntarily and without being denied assistance of counsel. However, the government has not convinced me beyond a reasonable doubt that it has sustained its heavy burden of showing that the defendant waived his Fifth Amendment rights or that the defendant's right to cut off questioning was scrupulously honored. Therefore, so much of the statement as the defendant made before the tape was turned on is admissible and the portion of the statement made after the tape was turned on is not admissible."

The defendant next contends that the testimony of the four police officers concerning the defendant's waiver of his rights before the tape recorder was turned on was "incredible." His major point is that the officers' testimony concerning the defendant's oral, unrecorded waiver was inconsistent with Detective O'Malley's recorded statements, which referred several times to Miranda warnings given by the Cambridge police but referred to only a short conversation between O'Malley and the defendant. The defendant argues that, if O'Malley had just read the defendant the Miranda warnings minutes before the recorded interview, then O'Malley's reference to the Cambridge officers' reading of the Miranda warnings coupled with his failure to mention his own recitation of Miranda warnings makes the testimony of the four officers on this matter uniformly unbelievable. While the failure of Detective O'Malley to refer to his own reading of the Miranda warnings during the recorded portion of the statement could create a possible inference of a failure to give the warnings, that possible inference is overwhelmingly outweighed by the consistently uniform testimony of the four police officers who were present at the interrogation. In the absence of clear error, we accept the judge's subsidiary findings concerning the credibility of these witnesses. See *Commonwealth* v. *Monteiro*, 396 Mass. 123, 131 (1985), and cases cited.

Finally, the defendant argues that the inconsistencies among those portions of the police officers' trial testimony concerning the defendant's statements made prior to the tape recording proves that the defendant's constitutional rights were violated. Because the defendant makes this argument for the first time on appeal, our review is limited to whether there has been a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Stewart*, *supra* at 543-544. After a thorough review of the record, we conclude that these inconsistencies are not substantial. Furthermore, the defendant was given every opportunity to cross-examine these witnesses, and the judge also instructed the jury on the Miranda warnings. In these circumstances, we find no error. See *Common-*

*wealth* v. *Therrien,* 359 Mass. 500, 507 (1971) (no error to deny voir dire requests where inconsistencies in testimony were not substantial and defendant was given every opportunity to cross-examine witnesses).

3. *The judge's refusal to excise portions of the tape-recorded statements.* In cross-examining Detective O'Malley, the defendant sought to introduce portions of the tape-recorded interrogation of which he had obtained suppression prior to trial. Although the trial judge warned both the defendant and his counsel that this could lead to the admission of the entire tape recording, both the defendant and his counsel stated that they understood that the defendant was waiving his right to have the tape recording suppressed. Defense counsel later sought to excise from the tape recording a passage where Detective O'Malley referred to statements attributed to Pope. The objectionable statements were, "Joe Pope's story doesn't jive with your story," and, "Pope says you got out there in a vehicle. . . . He mentioned two people outside in the van, but he didn't know who they were." The defendant contends that these statements were inadmissible because their introduction violated his right to confrontation under the Sixth Amendment to the United States Constitution, citing *Bruton* v. *United States,* 391 U.S. 123 (1968).

The objectionable statements in this case, however, were not the "powerfully incriminating extrajudicial statements of a codefendant" not testifying at trial. *Id.* at 135-136. Nor were the statements the most inculpatory evidence against the defendant. See *Commonwealth* v. *Dias,* 405 Mass. 131, 137 (1989). The statements that the defendant's story differed from Pope's story and that the defendant and Pope arrived at DeJesus's house in a van and not a taxicab were not even inculpatory statements. Because the defendant intimated that other individuals murdered the victim, the statement concerning other individuals outside the house in a van was actually exculpatory. Additionally, it was the defendant and not the prosecutor who introduced the tape-recorded statements in evidence. The objectionable portions of those statements related to other statements made by the defend-

ant at the same time about the same subject, and were, therefore, admissible under the "verbal completeness" doctrine. *Commonwealth* v. *Watson*, 377 Mass. 814, 827-828 (1979).

4. *Evidence of the defendant's arrest.* The defendant was carrying a black revolver when Cambridge police arrested him four months after the victim's murder. The gun was introduced in evidence, and DeJesus testified that it looked "just like" the gun which was pointed at his head during the robbery. The defendant challenges the relevancy of the evidence and argues that its unfair prejudice outweighs its probative value.

The fact that the defendant, within four months of the crimes, had in his possession a weapon that could have been the one used by Pope, was admissible in the judge's discretion. *Commonwealth* v. *Toro*, 395 Mass. 354, 356 (1985). "[I]t is commonly competent to show the possession by a defendant of an instrument capable of being used in the commission of the crime, without direct proof that that particular instrument was in fact used." *Id.*, quoting *Commonwealth* v. *O'Toole*, 326 Mass. 35, 39 (1950). Even if there are circumstances in which the prejudicial effect of the evidence outweighs its probative value, a judge can ameliorate such prejudice by a jury instruction, *id.* at 357, and, although unnecessary in this case, see *Commonwealth* v. *Storey*, 378 Mass. 312, 322 (1979) (weapon admissible and limiting instruction unnecessary where weapon clearly relevant to show that defendant had means to commit offense), cert. denied, 446 U.S. 955 (1980), the judge twice instructed the jury on the limited purpose for which the revolver was admitted in evidence.[4] Consequently, there was no error in the admission of the revolver in evidence.

---

[4]The judge instructed the jury as follows: "If someone is arrested after a crime has been committed, in this case, September as against May, but it's admitted solely on the issue of whether or not it's some evidence to you of whether the defendant had the means at the time of the offense that you're hearing, or May offense. Is it some evidence to you that he had the means to commit the crime that he's charged with on May? That's the only basis

The defendant also contends that the evidence of his arrest by Cambridge police was inadmissible. This evidence, for the most part, did not suggest that the police arrested the defendant on charges other than the ones for which he was on trial. The only possible exception was contained in a question from Detective O'Malley to the defendant in the tape-recorded interview that the defendant himself introduced in evidence.[5] Because the defendant did not move to strike the testimony and did not request a limiting instruction, he must show that this evidence created a substantial likelihood of a miscarriage of justice. G. L. c. 278, § 33E. *Commonwealth v. Sawyer*, 389 Mass. 686, 698-699 (1983). We conclude that this statement created no prejudice. See *id.* (inadvertent testimony concerning defendant's prior acts of misconduct did not create substantial likelihood of miscarriage of justice).

5. *The jury verdicts' pattern.* Although the jury found the defendant guilty of armed robbery and murder in the first degree, they found him not guilty of carrying a shotgun. The defendant contends that these verdicts demonstrate that the

---

that it's admitted for, and no other reason, and this should not be used by you for any other purpose in this case."

In the judge's final instructions to the jury, he also referred to the possession of the revolver. "Now, in this case, there was introduced a revolver or a weapon that was found in the possession of the defendant at the time of his arrest in Cambridge. That weapon is admitted solely for the jury to consider as to whether or not it lends any credible evidence to show that the defendant had in May the means to commit the offense charged either by himself or with an accomplice.

"It has been held by our Court that it is commonly competent to show the possession by a defendant of an instrument capable of being used in the commission of a crime without direct proof that the particular weapon was, in fact, the one used. You should consider the time interval that passed here. But the fact that the defendant had a weapon that could have been used in the commission of a crime is relevant as a link in tending to prove that the defendant committed that crime. And that is the sole ground[ ] upon which that evidence would be admitted, solely to determine whether it shows that he had the means capable of committing it."

[5]The relevant question from Detective O'Malley was: "Do you know that you are going to have a lawyer coming in this case and you're going to have a lawyer in the case that Cambridge has with you?"

jury rejected the factual theory on which the cases were submitted to them and that the guilty verdicts were based on insufficient evidence. Because all of the evidence presented by the prosecution identified the defendant as having a shotgun at the scene, the defendant argues that the jury's disbelief of his possession of a shotgun undermines the prosecutor's entire case and is manifestly inconsistent with their guilty verdicts.

"[T]he rule is well established in criminal cases that mere inconsistency in verdicts, one of which is an acquittal, will not render the verdict of guilty erroneous even though such inconsistency may have indicated the possibility of compromise on the part of the jury." *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969). See *Commonwealth* v. *White*, 363 Mass. 682, 684 (1973), and cases cited. The evidence warranted the jury's verdicts of murder in the first degree, on a theory of either deliberate premeditation or felony-murder, and armed robbery. See *Commonwealth* v. *Pope*, 406 Mass. 581, 584-586 (1990). While the not guilty verdict on the charge of possession of a shotgun may seem inconsistent with the guilty verdicts on the other charges, "[a] finding of not guilty at a criminal trial can result from any number of factors having nothing to do with the defendant's actual guilt." *Commonwealth* v. *Cerveny*, 387 Mass. 280, 285 (1982). For example, a jury have the power to acquit a defendant out of prejudice or compassion. *Id.* In these circumstances, we shall not disturb the jury's verdicts.

6. *The judge's instructions.* The defendant argues that the judge's instructions were deficient in several respects: the judge's failure to instruct the jury on the defendant's theory of defense; the judge's instruction on joint venture felony-murder; the judge's instruction that the jury could consider evidence that the defendant used a false name as evidence of consciousness of guilt, and the judge's failure to convey the proper meaning of "moral certainty" as it relates to reasonable doubt. Because the defendant did not object to these instructions at trial, we review his claims to determine whether there is a substantial likelihood of a miscarriage of justice.

*Commonwealth* v. *Tavares*, 385 Mass. 140, 149, cert. denied, 457 U.S. 1137 (1982). We conclude that the judge's instructions were without error.

The defendant's first objection to the judge's instructions, that he failed to instruct the jury that someone other than the defendant may have committed the murder, is without merit. The judge's instructions were correct as a matter of law.[6] Having correctly instructed the jury, the judge did not need to go further and discuss various theories proposed by the defendant on which the jury might acquit him. See *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 540 (1971), quoting *Commonwealth* v. *Greenberg*, 339 Mass. 557, 585 (1959) ("[h]aving given the jury correct rules for their guidance . . . [the judge] is not required to go further and discuss possible findings of fact upon which a defendant might be acquitted").

The defendant next contends that it was error for the judge to instruct the jury on joint venture felony-murder because there was insufficient evidence to find the defendant guilty on this theory. In order to prove the defendant guilty of felony-murder, the prosecution had to prove beyond a reasonable doubt that the defendant was a joint venturer in a felony with Pope, that the defendant intentionally assisted Pope in the commission of the felony, shared his mental state as to the commission of the felony, and that a homicide occurred in the commission of that felony and flowed naturally and probably from the carrying out of the joint enterprise. *Commonwealth* v. *Pope, supra* at 584-585. Contrary to the defendant's assertion, the jury could have concluded from the evidence that the defendant and Pope were engaged in a joint venture to rob DeJesus and the victim. The jury could have concluded that the defendant and Pope shared a mental

---

[6]The judge instructed the jury that "[o]ne of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Commonwealth has the burden of proving identity beyond a reasonable doubt. . . . If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, then you must find him not guilty."

Commonwealth *v.* Hamilton.

state to commit armed robbery, with the defendant robbing the victim and Pope robbing DeJesus. There is no question but that a homicide occurred during the commission of the armed robbery, and the jury could have concluded that the homicide flowed naturally and probably from the carrying out of the armed robbery. Additionally, it would not be unreasonable for the jury to conclude that the defendant shot the victim, even though the same jury found the defendant not guilty of carrying a shotgun.

The defendant gave a false name to the Cambridge police officers when they apprehended him four months after the murder, and this information was admitted in evidence through the testimony of the arresting police officer. The defendant argues that it was error for the judge to instruct the jury that they could consider his use of a false name as evidence of consciousness of guilt. "False statements made to the police are a standard example of admissible evidence on consciousness of guilt." *Commonwealth* v. *Carrion*, 407 Mass. 263, 276 (1990). We believe that the instructions on this evidence complied with the standard articulated in *Commonwealth* v. *Toney*, 385 Mass. 575, 585 (1982), that a judge should instruct the jury not to convict a defendant on the basis of consciousness of guilt alone, and that they may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant.[7] Consequently, there was no error.

The defendant's final objection to the judge's instructions is the inclusion of the phrase "moral certainty" concerning

---

[7]The judge instructed the jury as follows: "There has been some evidence in this case that the defendant may have used a false name at some time. If you find that the defendant knowingly did use a name other than his own in order to conceal his identity or to avoid identification, you may but are not required to infer that the defendant believed or had a consciousness of guilt. You may not, however, infer on that basis alone that the defendant is, in fact, guilty of the crime for which he is charged.

"You may consider his feeling of guilt as evidence tending to show guilt, but you are not required to do so. Under no circumstances can you presume a defendant's guilt from the false statement[ ] alone. You should

reasonable doubt.[8] The judge's instructions were consistent with the language of *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850), of which this court has approved on numerous occasions. See *Commonwealth* v. *Beldotti*, 409 Mass. 553, 562 (1991); *Commonwealth* v. *Wood*, 380 Mass. 545, 551 (1980), and cases cited. The defendant offers no compelling reason to depart from this long-established precedent.[9]

After a careful review of the defendant's arguments, as well as a review of the entire record in accordance with G. L. c. 278, § 33E, we conclude that the defendant's convictions are consonant with justice.

*Judgments affirmed.*

---

consider and weigh it if you find that there is a fact, if you find, by a defendant in connection with all the other evidence in the case and give it such weight as in your judgment it is fairly entitled to receive with respect to these indictments.

"In any event, that evidence of consciousness of guilt relative to giving a false name would not be considered by you in coming to a determination on the issue of deliberate premeditation; because the deliberate premeditation, as I will instruct you a little later, had to have occurred back on the 23rd of May. So what someone did some months later would have no bearing on that, that element of the charges here."

[8]The judge instructed the jury that "[r]easonable doubt is that state of the case when after the comparison and consideration of all of the evidence the minds of the jurors are left in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charges."

[9]The defendant's major argument is that the United States Court of Appeals for the First Circuit found the use of the phrase "moral certainty" objectionable in *Lanigan* v. *Maloney*, 853 F.2d 40, 47 (1st Cir.), cert. denied, 488 U.S. 1007 (1989). In fact, the First Circuit wrote approvingly of the *Webster* charge in *Lanigan*: "We find it hard to imagine, without recourse to prolixity, a charge more reflective of the solemn and rigorous standard intended." *Id.* at 43.