COMMONWEALTH *vs.* RONALD E. BURNETT.

No. 92-P-1307.

Suffolk. October 13, 1993. - January 31, 1994.

Present: DREBEN, KAPLAN, & LAURENCE, JJ.

Further appellate review granted, 417 Mass. 1104 (1994).

*Jury and Jurors. Constitutional Law*, Jury. *Practice, Criminal*, Challenge to jurors.

At the trial of a twenty-six year old black defendant on indictments arising out of a violent mugging of a white male on a subway car, the prosecutor correctly articulated on the record an adequate basis for her challenge of a black prospective juror as having a "hostile" or "argumentative" attitude, which was demonstrated in responses to the judge's voir dire questions regarding impartiality [3-4]; with respect to the other available black prospective juror, however, whom the prosecutor challenged on the basis of his occupation as a youth services worker, this court concluded that the judge's implicit acceptance of the prosecutor's explanation of the challenge, without a determination on the record whether the prosecutor's reasons for exercising the challenge were bona fide, constituted an error of constitutional dimension that was prejudicial per se [5-6].

INDICTMENTS found and returned in the Superior Court Department on March 12, 1990.

The cases were tried before *Sandra L. Hamlin*, J.

*George E. Hazel* for the defendant.

*Paul B. Linn*, Assistant District Attorney, for the Commonwealth.

LAURENCE, J. The defendant, a twenty-six year old black man, was convicted by a jury of various crimes arising out of a violent mugging of a white man on the Orange Line subway. He argues on appeal that the trial judge erred in allowing the Commonwealth to misuse two peremptory challenges to exclude the only two available black veniremen from the jury. We agree that the defendant has demonstrated a violation of the principles of *Commonwealth* v. *Soares*, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979), and its progeny, entitling him to reversal of his conviction and a new trial.

Five of the thirty-six member venire were black. Three excused themselves because of their professed inability, in response to the judge's voir dire questioning, to be fair and impartial in this case. The Commonwealth challenged the remaining two black jurors. Following their exclusion, the defendant objected to this use of peremptory challenges as having produced a petit jury without black members. The prosecutor, tacitly acknowledging that the defendant had made an adequate prima facie showing that the Commonwealth had improperly removed members of a discrete group from the jury, see *Commonwealth* v. *Soares*, 377 Mass. at 489-490; *Commonwealth* v. *Fryar*, 414 Mass. 732, 738-739 (1993), then attempted to satisfy her burden of providing race-neutral reasons for her challenges, *id.* at 739, without any prompting from the judge. She explained that the challenge to one of the two black veniremen was based on the "hostile" and "argumentative" attitude which he had demonstrated in responding to the judge's voir dire questions regarding impartiality. The other challenge was, she claimed, based upon the venireman's occupation as a director of a youth services program; in her experience, such professionals

"who work with young people have certain feelings about young people and about youth and crime."

The judge expressed agreement with the prosecutor that the former juror had displayed a bad attitude; said nothing about the prosecutor's observations concerning the youth services juror; and made no explicit findings on the defendant's objection or the prosecutor's rationale. The judge should have explicitly determined on the record whether the prosecutor's reasons for her challenges were bona fide rather than sham. See *Commonwealth* v. *Fryar*, 414 Mass. at 739; Brown, The Peremptory Challenge as a Manipulative Device in Criminal Trials: Traditional Use or Abuse, 14 New Eng. L. Rev. 192 (1978). The judge merely concluded that there was "absolutely nothing wrong with the [jury selection] process" and that the resulting panel consisted of "fair and impartial jurors that the court has declared indifferent." We conclude (and the defendant does not argue otherwise) that the judge implicitly accepted the prosecutor's explanations for her challenge of the two black jurors as bona fide and sufficient.

The sole question on appeal is the adequacy of the prosecutor's expressed reasons for her challenges. The familiar standards for reviewing such adequacy can be easily stated, if not applied. "While [the prosecutor] need not approximate the grounds required by a challenge for cause, [her] reason must pertain to the individual qualities of the prospective juror and not to that juror's group association." *Commonwealth* v. *Soares*, 377 Mass. at 491. This reason must be one that is race-neutral. *Batson* v. *Kentucky*, 476 U.S. 79, 98 (1986). *Commonwealth* v. *Harris*, 409 Mass. 461, 464 (1991). *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. 564, 568 (1991). It must be "personal to the juror and not based on the juror's group affiliation." *Commonwealth* v. *Young*, 401 Mass. 390, 401 (1987). "[G]eneral assertions are not sufficient. '[T]he prosecutor must give a "clear and reasonably specific" explanation of [her] "legitimate reasons" for exercising the challenges.' " *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 568, quoting from *Batson* v. *Kentucky*,

476 U.S. at 98 n.20. "Sorting out whether a permissible or impermissible reason underlies a peremptory challenge is the function of the trial judge, and we do not substitute our judgment for his if there is support for it on the record." *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 552 (1981). See *Commonwealth* v. *Walker*, 379 Mass. 297, 301 (1979). Reviewing courts will accord the trial judge's findings substantial deference if supported by the record. *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 569.

Under these criteria, the prosecutor's challenge of the juror with a bad attitude can be upheld. The judge expressly agreed with the prosecutor's characterization of that juror as hostile and argumentative. (The defendant does not attack the judge's failure to have made a specific finding in that respect; but cf. *Commonwealth* v. *Mathews*, *supra* at 571.) We cannot discern from the bare record the true flavor of the exchange between the judge and the juror that led to this conclusion, although the transcript can be read to reflect a certain irritation or rancor on that juror's part. A trial judge's findings based upon his personal observations of a witness's bearing under questioning are quintessentially entitled to our deference. See *Batson* v. *Kentucky*, 476 U.S. at 98 n.21; *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 675 (1977); *Commonwealth* v. *Jackson*, 391 Mass. 749, 756-757 (1984). The exercise of peremptory challenges based upon prospective jurors' responses to questions, or their demeanor, attitude, or facial expressions is acceptably neutral. See *Commonwealth* v. *Hamilton*, 411 Mass. 313, 317 (1991); *Commonwealth* v. *Kelly*, 10 Mass. App. Ct. 847 (1980). There is nothing to the defendant's contention that the prosecutor failed to challenge two other, white, jurors who responded to the judge's voir dire questioning in a manner similar to that of the challenged black juror. The similarity of response was only partial; and the prosecutor's challenge was not based on the particular wording of the response, but rather on the hostile attitude displayed by the challenged responder, alone, toward the court.

We reach a different conclusion, however, as to the prosecutor's challenge to the final black juror based upon his position as a youth services program director. Addressing the issue without deference to the trial judge's implicit ruling, made without "any meaningful evaluation of the reasons given," see *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 571, we conclude that the proffered rationale fell short of having "a veneer of plausibility." *Commonwealth* v. *Legendre*, 25 Mass. App. Ct. 948, 949 (1988). The twenty-six year old defendant could hardly be characterized as a "youth." See G. L. c. 119, § 58; G. L. c. 120, §§ 16-20; G. L. c. 231, § 85P; *Commonwealth* v. *Traylor*, 29 Mass. App. Ct. 584, 590 n.2 (1990); Webster's Third New Int'l Dictionary 2654 (1971). The prosecutor's expressed misgivings about youth workers having "certain feelings . . . about youth and crime" also failed to constitute a "clear and reasonably specific explanation," *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 568, but rather were ambiguous. The record is destitute of any legal or factual basis supporting whatever may have been the prosecutor's belief regarding the unexplained propensities of those who work with youth; nor was any authority offered for the propriety of taking judicial notice of any such occupational attitudes. Cf. *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 460-461 (1989).

Such an error in jury empanelment is of constitutional dimension and is prejudicial per se. *Commonwealth* v. *Soares*, 377 Mass. at 492. *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 572. The Commonwealth's protest that the petit jury did contain one black who had not been challenged is unavailing. Even if that juror (who had an Hispanic name but appeared to the prosecutor and the trial judge to be black, though not to the defendant) in fact were black, the result would be unaltered. See *Commonwealth* v. *Soares*, 377 Mass. at 488 n.32 (reversal when twelve of thirteen prospective black jurors were improperly challenged, though one black person sat on petit jury). See also *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 568, 569-572, and cases

cited (reversal when one black venireman improperly chal-
lenged, even though one black person sat on petit jury).

*Judgments reversed.*
*Verdicts set aside.*