## Commonwealth *vs.* David P. Curtiss.

No. 94-P-385.

Berkshire. October 19, 1995. - April 29, 1996.

Present: Dreben, Porada, & Greenberg, JJ.

Further appellate review granted, 422 Mass. 1110 (1996).

*Jury and Jurors. Constitutional Law,* Jury. *Practice, Criminal,* Jury and jurors, Empanelment of jury, Challenge to jurors, Argument by prosecutor.

In a criminal case in which the defendant properly exercised a peremptory challenge of the only black juror on the venire and the judge erroneously disallowed the challenge without making an initial determination of impropriety or findings with respect to whether defense counsel's proffered reasons for exclusion were personal to the juror and race-neutral or were a pretext, the defendant was entitled to a new trial. [353-356] Dreben, J., dissenting.
There was no error at a criminal trial arising from the prosecutor's closing argument. [356-357]

Indictments found and returned in the Superior Court Department on March 20, 1992.

The cases were tried before *William W. Simons,* J.

*Patricia A. O'Neill,* Committee for Public Counsel Services, for the defendant.

*Eric Neyman,* Assistant District Attorney, for the Commonwealth.

Greenberg, J. According to the complainant (a mentally handicapped black woman), a white man took her into his car, pulled off her undergarments, and sexually assaulted her, stopping only after two acts of forced intercourse. Afterwards, he drove her across the Massachusetts border, leaving her in a rural part of New Lebanon, New York. The next morning, she told Pittsfield police officers that the defendant was the rapist. Two days later, the police arrested the defendant and advised him of the accusations. He offered a different version of the events: their initial meeting took place at a local pub in

Pittsfield where both drank; later, inside his car, they started kissing, went further, and had consensual intercourse.

Seeking reversal of the various convictions arising out of the events, the defendant assigns two grounds of error: (1) the trial judge improperly denied his peremptory challenge to a prospective juror on the venire and (2) the prosecutor's improper closing speech to the jury was not cured by the judge's instructions. Although the evidence presented against the defendant was persuasive on the issue of lack of consent, we reverse the convictions and order a new trial because of constitutional violations in the course of selecting a jury. We also comment on the prosecutor's closing argument.

1. *Jury empanelment.* Juror selection occurred over two days, with the defendant requesting an individual voir dire of prospective jurors. At the start, the judge made it clear to the venire that the case involved "intercourse between people of different races" and that the question of consent was the sole issue. Three of the four questions posed to each prospective juror addressed racial prejudices rather than general impartiality. See *Commonwealth* v. *Hobbs*, 385 Mass. 863, 873 (1982).

During this aspect of impanelling jurors, the judge agreed to defense counsel's request to inquire of the only black potential juror on the venire, whom we shall refer to as Juror 13, whether his wife, a direct care worker for the Department of Social Services (DSS), worked with persons who were sexually abused. In response to the judge's additional questions on this point, Juror 13 said that his wife, in fact, did work with sexually abused children. That circumstance, he felt, would not interfere with his ability to remain impartial. The judge declared Juror 13 indifferent, prompting the defendant to exercise one of his peremptory challenges.

Because Juror 13 was the only minority person in the venire, the judge then intervened. Without making a finding that the defendant's peremptory challenge was exercised improperly, he required defense counsel to support his challenge with a nonracial justification. See *Commonwealth* v. *Harris*, 409 Mass. 461, 466 (1991). Defense counsel's proffer repeated the same rationale: Juror 13's wife worked for a State agency that dealt with child sexual abuse cases. Additionally, defense counsel explained that Juror 13's wife's employment might taint the way the juror himself viewed the case. After a prolonged colloquy with defense counsel,

reproduced in an appendix to this opinion, the judge denied the defendant's requested challenge, noting that DSS was not involved in the instant case, nor was the complainant a child. In explaining why he thought defense counsel's reasons inadequate, the judge stated:

> "Let me put it this way. I think the circumstances of this case and the fact that two panels, two arrays, and two separate days produced but one black potential juror, eliminate the need for establishing a pattern and require me to make a judgment as to whether your challenge has a nonracial basis. The fact that this man's wife works for a department of the State that investigates, among other things, children victims and family victims, is insufficient to take it out of the area of a potential challenge based on racial grounds. Now, I want to be careful. I'm not accusing counsel of doing something improper in the sense that he should be admonished, but I am sensitive to the need for there to be a racial balance."

The defendant objected on the ground that his use of peremptory challenges did not create any pattern of invidious discrimination and that his challenge to Juror 13 was "consistent in taking certain types of people off the jury. . . ." No findings of the judge on this crucial point appear in the record.

While both State and Federal Constitutions guarantee criminal defendants the right to an impartial jury, *Commonwealth* v. *Long*, 419 Mass. 798, 802 (1995), there is no corresponding right to the exercise of peremptory challenges. *Commonwealth* v. *Reid*, 384 Mass. 247, 253-254 (1981). *Commonwealth* v. *Wood*, 389 Mass. 552, 559 (1983). *Commonwealth* v. *Hutchinson*, 395 Mass. 568, 571 (1985). Rather, art. 12 of the Massachusetts Declaration of Rights constitutionally circumscribes the use of peremptory challenges by prohibiting both prosecution and defense from removing prospective jurors exclusively because of bias presumed to stem from their membership in discrete community groups based on creed or national origin. See *Commonwealth* v. *Soares*, 377 Mass. 461, 489 n.35, cert. denied, 444 U.S. 881 (1979); *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 290 (1981); *Commonwealth* v.

*Carleton*, 36 Mass. App. Ct. 137, 140, *S.C.*, 418 Mass. 773 (1994).[1]

Our review of whether the judge properly denied the defendant's peremptory challenge is governed by certain well-settled principles contained in the cases. We begin with the presumption that the peremptory challenge was proper. *Commonwealth* v. *Long*, 419 Mass. at 806. "[T]his presumption may be rebutted by showing that (1) a pattern of conduct has developed whereby prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood that they are being excluded from the jury solely on the basis of their group membership. *Commonwealth* v. *Burnett*, 418 Mass. 769, 770 (1994). *Commonwealth* v. *Soares, supra* at 490." *Ibid.* Where the total number of members in a discrete group in the venire is small, we have acknowledged the difficulty inherent in establishing a pattern of conduct. See *Commonwealth* v. *Brown*, 11 Mass. App. Ct. at 293-294. But the cases say that "the challenge of even a single prospective juror within a protected class can, in certain instances, constitute a prima facie showing of impropriety." *Commonwealth* v. *Long*, 419 Mass. at 807. See also *Commonwealth* v. *Harris*, 409 Mass. at 465, 467; *Commonwealth* v. *Burnett*, 418 Mass. at 771; *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 553 (1981). Contrast *Commonwealth* v. *Valentin*, 420 Mass. 263, 267-269 (1995) (finding no error in removal of sole Hispanic venireman because of his difficulty understanding English language).

So far as the case before us is concerned, the judge, himself, raised the issue of whether the presumption was rebutted by his own observations. See *Commonwealth* v. *Reid*, 384 Mass. at 251 n.7; *Commonwealth* v. *Wood*, 389 Mass. at 560; *Commonwealth* v. *Perry*, 15 Mass. App. Ct. 932, 932 (1983); *Commonwealth* v. *Legendre*, 25 Mass. App. Ct. 948 (1988). His language, however, did not rise to an initial determination of impropriety. See *Commonwealth* v. *Green*, 420 Mass. 771, 776 (1995) (error for judge to require defense counsel to provide reasons for peremptory challenge before making a finding of impropriety).

---

[1]Purposeful discrimination in the use of peremptory challenges by the prosecution or the defense also contravenes the Fourteenth Amendment to the United States Constitution. *Batson* v. *Kentucky*, 476 U.S. 79, 86 (1986). *Georgia* v. *McCollum*, 505 U.S. 42 (1992).

Once a prima facie showing of impropriety of the peremptory challenge is made, the challenging party has the burden of providing a group-neutral reason for challenging the prospective juror. See *Commonwealth* v. *Soares,* 377 Mass. at 491; *Commonwealth* v. *Burnett,* 418 Mass. at 771; *Commonwealth* v. *Long,* 419 Mass. at 807. In surmounting the constitutional hurdle, the challenging party's reason need not rise to the level required by a challenge for cause, *Commonwealth* v. *Hamilton,* 411 Mass. 313, 316 (1991); *Batson* v. *Kentucky,* 476 U.S. 79, 97 (1986), but must be "clear and reasonably specific" and " 'personal to the juror and not based on the juror's group affiliation.' " *Commonwealth* v. *Burnett,* 418 Mass. at 771, quoting from *Commonwealth* v. *Young,* 401 Mass. 390, 401 (1987). Moreover, the " 'neutral explanation [must be] related to the particular case to be tried.' " *Commonwealth* v. *Carleton,* 36 Mass. App. Ct. at 143, quoting from *Batson* v. *Kentucky,* 476 U.S. at 98.[2] Once the challenging party proffers an explanation for the challenge, "the judge should . . . specifically determine[ ] whether [it is] bona fide or a mere sham." *Commonwealth* v. *Burnett,* 418 Mass. at 771. *Commonwealth* v. *Futch,* 38 Mass. App. Ct. 174, 177 (1995). See also *Purkett* v. *Elem,* 115 S. Ct. 1769, 1771 (1995) (explanation need only be facially valid).

Here, the defendant provided "a persuasive neutral reason unrelated to [in this case the alleged victim's] group membership." *Commonwealth* v. *Harris,* 409 Mass. at 468. He "articulated, on the record, an explanation for the challenge that was not vague and general." *Commonwealth* v. *Caldwell,* 418 Mass. 777, 779 (1994). As in *Commonwealth* v. *Hamilton,* 411 Mass. at 317, where the court speaks of a "neutral explanation [that] pertained to the individual qualities of the prospective jurors and not their group association," nothing in the record here indicates that the defendant had a race-based motive for challenging. Indeed, the judge acknowledged this by saying he "was not accusing counsel of doing something improper in the sense that he should be admonished."

There is a difference in themes in several cases as to what

---

[2]"For the purposes of peremptory challenges, the term 'neutral' is defined as a reason which is not present in those nonminority panel members not struck by the [challenging party]." *Commonwealth* v. *Futch,* 38 Mass. App. Ct. 174, 177 (1995).

works to rebut the possibility of racial animus. The *Hamilton* court permitted a prosecutor to challenge one of the prospective black jurors on the basis of her demeanor and of inconsistent response to voir dire questions. 411 Mass. at 317. In *Commonwealth* v. *Hyatt*, 409 Mass. 689, 690-692 (1991), a racial motive was not found where a black defendant challenged two white jurors, one on account of her occupation and the other because she lived near the scene of the crime.

Work experience may reasonably affect an accused's choice of a juror. The government contends that the situation is more like *Commonwealth* v. *Burnett*, 36 Mass. App. Ct. 1, 5 (1994), *S.C.*, 418 Mass. at 772, in which a characterization that youth workers might have certain feelings about crime was held insufficient to challenge a black juror. This is a different type of case. Far from approaching so general a level, the defendant's challenge in the case at bar involved more than mere insinuation. Confronted by what appeared to be a potential juror whose spouse worked with sexually abused children, the defendant's stated reasons pertained to an individual quality of the prospective juror and not to his group membership.

In general, we accord a trial judge wide discretion in the jury selection process, *Commonwealth* v. *Barnoski*, 418 Mass. 523, 530 (1994); *Commonwealth* v. *Long*, 419 Mass. at 803, and give substantial deference to the determination of a prima facie showing of discriminatory intent in the use of peremptory challenges where supported by the record. See *Commonwealth* v. *Valentin*, 420 Mass. at 269; *Commonwealth* v. *Legendre*, 25 Mass. App. Ct. at 949; *Commonwealth* v. *Carleton*, 36 Mass. App. Ct. at 141. However, where, as here, the judge not only failed to make an initial determination of impropriety, but also failed to make findings of whether the proffered reasons for exclusion were bona fide or a pretext, we need not defer to the judge's determination. See *Commonwealth* v. *Burnett*, 418 Mass. at 771-772; *Commonwealth* v. *Green*, 420 Mass. at 776-777.

We are mindful that exclusion of the juror in question may create "a significant risk" that the "subtle group biases of the majority are permitted to operate, while those of the minority have been silenced." *Commonwealth* v. *Soares*, 377 Mass. at 488. *Commonwealth* v. *Fryar*, 414 Mass. 732, 741 (1993). Such a risk, however, cannot be permitted to overcome a

properly exercised peremptory challenge. To hold otherwise would reduce a defendant's right to a fair and impartial jury to a nullity. *Commonwealth* v. *Susi,* 394 Mass. 784, 786 (1985) ("The failure to grant a defendant a fair hearing before an impartial jury violates even minimal standards of due process").

The defendant gave specific reasons for his challenge that were both personal to the juror and race-neutral — his wife's experience with sexual abuse cases might affect his perception of the case. Compare *Commonwealth* v. *Barnoski,* 418 Mass. at 533-534 ("the prospective [Hispanic] juror comported himself in a manner which the prosecutor could find troubling for reasons unrelated to the juror's ethnicity"); *Commonwealth* v. *Caldwell,* 418 Mass. at 778-782 (legitimate race-neutral reasons for prosecutor's peremptory challenges given). Contrast *Commonwealth* v. *Fruchtman,* 418 Mass. 8, 11 n.5, 15, cert. denied, 115 S.Ct. 366 (1994) (upholding judge's conclusion that defendant did not have legitimate gender-neutral reasons for peremptory challenges and judge's rejection of defendant's challenges to women based on their employment). The defendant's concern with Juror 13's wife's occupation was in no sense a pretext. In denying the defendant's challenge, the trial judge held the defendant to an erroneous standard akin to that of a challenge for cause. See *Commonwealth* v. *Green,* 420 Mass. at 778. Such action — the erroneous disallowance of a peremptory challenge — amounts to reversible error even in the absence of a showing of prejudice. See *Commonwealth* v. *Green, supra,* citing *Commonwealth* v. *Wood,* 389 Mass. at 564.

2. *The prosecutor's closing argument to the jury.* We briefly comment on the prosecutor's closing argument. While the prosecutor could have tempered some of the remarks about which appellate counsel now complains, they appear (1) to suggest from the evidence that the victim had limited mental capacity relevant to the issue of consent, see *Commonwealth* v. *Eldridge,* 28 Mass. App. Ct. 936, 937 (1990), and (2) to be comments on the motivation of the defendant inherently permissible from the evidence. See *Commonwealth* v. *Palmariello,* 392 Mass. 126, 132-136 (1984). Moreover, the judge instructed the jury that any excesses in the prosecutor's argument were not evidence and that they should decide the case

on the evidence and not on sympathy, prejudice, suspicion, or speculation. There was no error.

*Judgments reversed.*

*Verdicts set aside.*

#### Appendix.

The exchange between counsel and the judge was as follows:

THE JUDGE: "I suppose we ought to clear this up for the record. This juror is black, the only one on the panel, the only on either panel — the one from Friday and this one today. I'm going to call on you to justify it with something more than just a peremptory challenge under these circumstances."

DEFENSE COUNSEL: "In spite of the fact that he indicated that he wouldn't talk to his wife, I'm concerned about the fact that the DSS is an investigative arm of the District Attorney's Office in sexual-abuse-type cases. They do their own investigation but they also work with the District Attorney's Office with [G. L. c. 119, § 51A] persons and even after that. They are people who are very deeply concerned with sexual abuse, and that gives people a particular point of view in those types of cases. And this case is going to come down to the issue of consent. I've been very clear all the way through that that's my client's defense. . . . I think I have a right to exercise a peremptory challenge on this gentleman because of the connection with his wife. This has nothing to [do] with him being black or white, but everything to do with a very significant figure in his life, and that's his wife, and how that might taint the way that my client's defense is heard."

PROSECUTOR: "I want to make it very clear for the record, I would call it a misrepresentation of DSS to indicate in any way that they are an arm of the District Attorney's Office. They have a very separate and different function. At times our functions blend together and we work toward a common goal — at times. Sometimes we are at conflict with the Department of Social Services. . . . They work independently for their own purposes much like any other agency does in the Commonwealth."

DEFENSE COUNSEL: "If this gentleman's wife was a member of the Department of Revenue and this matter had tax overtones, I wouldn't want him for that reason. I think I have substantial reasons that have nothing to do with race."

THE JUDGE: "There is not going to be any DSS involvement in this trial as far as I know."

PROSECUTOR: "That's correct."

THE JUDGE: "The alleged victim is not a child, or wasn't a child at the time. The Department of Social Services functions are basically with children; am I correct?"

PROSECUTOR: "They deal with family, but yes, individually they would deal with children."

THE JUDGE: "I'm not convinced. I don't think there's such a basis. I asked him about his wife's involvement. I'll ask further, I guess."

DEFENSE COUNSEL: ". . . I think that I have good and sufficient reasons

358        40 Mass. App. Ct. 350

*Commonwealth v. Curtiss.*

· stated on record that have nothing to do with race here. It has everything to do with my client's perceptions, of both our perceptions before the person even walked out and we knew who he was. We looked there and saw DSS, and neither one of us wanted him. . . . I would suggest, Your Honor, I have stated sufficient reasons totally independent of the race of this particular juror. I would ask to have this juror removed under my peremptory challenge, and I would ask The Court to do that."

THE JUDGE: "I decline to do so and I'm going to let it rule that your challenge is inappropriate under these circumstances. So your rights are saved and I will seat this juror as number 13."

DREBEN, J. (dissenting). The following quotation from *Commonwealth* v. *Soares*, 377 Mass. 461, 489 n.35, cert. denied, 444 U.S. 881 (1979), provides the setting for my giving deference to the judge's decision rejecting the peremptory challenge:

> "[W]e recognize the Commonwealth's interest in prosecutions that are 'tried before the tribunal which the Constitution regards as most likely to produce a fair result.' *Singer* v. *United States*, 380 U.S. 24, 36 (1965). For this reason, we deem the Commonwealth equally to be entitled to a representative jury, unimpaired by improper exercise of peremptory challenge by the defense. Such a rule also serves to protect minority groups in the community. 'For example, when a white defendant is charged with a crime against a black victim, the black community as a whole has a legitimate interest in participating in the trial proceedings; that interest will be defeated if the prosecutor does not have the power to thwart any defense attempt to strike all blacks from the jury on the ground of group bias alone.' *People* v. *Wheeler*, [22 Cal. 3d 258,] 282 n.29 [1978]."

See also *Commonwealth* v. *Fruchtman*, 418 Mass. 8, 13-14, cert. denied, 115 S. Ct. 366 (1994).

Although both the Commonwealth and the defendant are entitled in every case to a jury selected by nondiscriminatory criteria, "in some cases the racial composition of the jury necessarily will be of greater concern." *Commonwealth* v. *Fryar*, 414 Mass. 732, 741 (1993). Since here a white defendant is accused of raping a black woman, see *ibid.*; cf. *Commonwealth*

v. *Sanders,* 383 Mass. 637, 640 (1981),[1] the judge was warranted in considering this to be such a case, and one where "the 'diffused impartiality' that comes from a diverse jury is invaluable." *Commonwealth* v. *Fryar,* 414 Mass. at 741, quoting from *Commonwealth* v. *Soares,* 377 Mass. at 485. The purging of the one black juror could be viewed by the trial judge as creating a significant risk that the "subtle group biases of the majority are permitted to operate, while those of the minority have been silenced." *Commonwealth* v. *Soares,* 377 Mass. at 488. *Commonwealth* v. *Fryar,* 414 Mass. at 741.

After declining to allow the peremptory challenge, the judge, at the request of defense counsel, explained his reasons:

> "Let me put it this way. I think the circumstances of this case and the fact that two panels, two arrays, and two separate days produced but one black potential juror, eliminate the need for establishing a pattern and require me to make a judgment as to whether your challenge has a nonracial basis. The fact that this man's wife works for a department of the State that investigates, among other things, children victims and family victims, is insufficient to take it out of the area of a potential challenge based on racial grounds. Now, I want to be careful. I'm not accusing counsel of doing something improper in the sense that he should be admonished, but I am sensitive to the need for there to be a racial balance."

As the majority concedes, a judge may raise the issue of an improper use of peremptory challenge sua sponte. Since the exclusion of a single member of a discrete group may establish a prima facie case of discrimination, *Commonwealth* v. *Harris,* 409 Mass. 461, 465 (1991); *Commonwealth* v. *Fryar,* 414 Mass. at 738, the judge, in my view, cannot be faulted for finding that "the circumstances of this [interracial rape] case" and the fact that there was only "one black potential juror" presented a sufficient prima facie showing of an improper pe-

---

[1] In holding that an individual voir dire of jurors is required if requested by the defendant in interracial rape cases, the court in *Sanders* held that for purposes of G. L. c. 234, § 28, second par., such cases "as a matter of law . . . present a substantial risk that extraneous issues will influence the jury." 383 Mass. at 640-641.

remptory challenge to require the defendant to provide a race-neutral reason. See *Commonwealth* v. *Long,* 419 Mass. 798, 807 (1995). See also *Commonwealth* v. *Herbert,* 421 Mass. 307, 314 (1995).

Having made that determination, and having heard what the defendant proffered as a race-neutral explanation, the judge had "to decide whether the reason for the challenge offered by the [defendant] was bona fide or a pretext." *Commonwealth* v. *Valentin,* 420 Mass. 263, 269 (1995), citing *Commonwealth* v. *Burnett,* 418 Mass. 769, 771 (1994). On appeal, his decision on that question "is entitled to substantial deference." *Commonwealth* v. *Valentin,* 420 Mass. at 269.

It would, of course, have been preferable if the judge had explicitly followed the now established procedure, which requires a judge first to find whether a prima facie showing of impropriety has been made, then to determine whether a group-neutral reason for challenging the prospective juror has been given, and, if so, to decide whether the challenges were exercised improperly because they were based on the juror's membership in a discrete group. *Commonwealth* v. *Burnett,* 418 Mass. at 770-771. See *Purkett* v. *Elem,* 115 S. Ct. 1769, 1771 (1995). However, this case was tried before the decisions in *Burnett* and *Purkett,* see *Commonwealth* v. *Herbert,* 421 Mass. at 314; see *Purkett, supra* at 1772-1775 (Stevens, J., dissenting), and I think the judge's explanation should be accorded deference by this court as it, read fairly, sufficiently makes the requisite factual finding that the challenge was not bona fide. The judge determined that there is special concern in this case for the composition of the jury and that the proffered neutral explanation was for an impermissible, racially-based reason. That he "was not accusing counsel of doing something improper in the sense that he should be admonished" does not derogate from that finding, and is not, as the majority suggests, an acknowledgement that the challenge was not race-based.

The facts before him were that the defendant and the victim were both adults. The DSS worker was a direct case worker, not an investigative one, and although the colloquy was somewhat ambiguous as to whether she worked with sexually

abused children,[2] even if she did, the claimed relationship with abused children could be viewed by the judge, in light of the issues of the case, to be a pretext. It was the juror's wife, not the juror, who was involved with DSS, and, more important, the main issue of the case was consent, a defense never available in cases involving children.

In an analogous case, *Commonwealth* v. *Burnett*, 36 Mass. App. Ct. 1, 5 (1994), *S.C.*, 418 Mass. at 772, a twenty-six year old black defendant was charged with crimes arising out of the violent mugging of a white man in a subway. The prosecutor challenged a black juror based on his occupation as a youth services program director, arguing that professionals "who work with young people have certain feelings about young people and about youth and crime." 418 Mass. at 770. Without making an explicit determination that the prosecutor's reasons were bona fide, the judge upheld the challenge.[3] In reversing the trial judge and concluding that such reason "fell short of having 'a veneer of plausibility,' " this court pointed out that the twenty-six year old defendant could hardly be characterized as a youth. Moreover, we noted, "[t]he record is destitute of any legal or factual basis supporting whatever may have been the prosecutor's belief regarding the unexplained propensities of those who work with youth; nor was any authority offered for the propriety of taking judicial notice of any such occupational attitudes." 36 Mass. App. Ct. at 5. The reasoning of this court was approved in

---

[2]The judge asked of Juror 13:

> "[Y]our wife is a direct care worker for the Department of Social Services. In connection with her duties, do you know if she works in the area of persons who are alleged to have been sexually abused, or is she in some other part of the office; if you know? Have you discussed with her over the years the kind of work she does periodically?"

Juror 13: "Yes."

During the colloquy concerning Juror 13, the judge also asked counsel whether there would be DSS involvement in the trial and whether the alleged victim was now a child or was one at the time of the incident. She was twenty-nine years old. The judge noted that basically DSS functions with children.

[3]The trial judge's lack of findings eliminated any need of deference to his implicit ruling. *Commonwealth* v. *Burnett*, 36 Mass. App. Ct. at 5, *S.C.* 418 Mass. at 772.

*Commonwealth* v. *Burnett*, 418 Mass. at 772. Where, as here, the challenge is based on the occupation not of the juror but of the juror's spouse, there is perhaps even less reason to believe that such occupation had any bearing on the relevant issue at trial — consent — and the trial judge was warranted in so concluding. See also *Commonwealth* v. *Legendre*, 25 Mass. App. Ct. 948, 949 (1988), where we upheld the decision of a trial judge rejecting a challenge to women who had relatives on the police force where the credibility of police witnesses was "not likely to be dispositive or even of any weight" on the issue of consent to sexual intercourse. The question was whether the challenge was "in good faith or in bad faith" in "purging the jury of a discrete group." "Sorting out whether a permissible or impermissible reason underlies a peremptory challenge is the function of the trial judge, and we do not substitute our judgment for his if there is support for it on the record" (citations omitted). *Ibid.* See also *Commonwealth* v. *Valentin*, 420 Mass. at 269. Accordingly, I would defer to the judge's finding that the challenge was racially motivated, or as put more tactfully by him, was not "out of the area of a potential challenge based on racial grounds."[4] As I agree with the majority that the prosecutor's closing argument did not create reversible error, I would affirm the defendant's convictions.

---

[4]See and contrast *Commonwealth* v. *Green*, 420 Mass. 771, 777 (1995) (even if the judge had made a finding of an improper challenge that finding would have been "clearly erroneous").