COMMONWEALTH VS. LARRY MATHEWS.

No. 90-P-1037.

Suffolk. September 16, 1991. - November 20, 1991.

Present: DREBEN, FINE, & JACOBS, JJ.

*Constitutional Law*, Jury. *Practice, Criminal*, Challenge of jurors, Argument by prosecutor.

At the trial of a black defendant on indictments charging crimes having an interracial sexual aspect, the prosecutor's peremptory challenge of a black prospective juror, leaving one black juror remaining to serve, considered with the peremptory challenge of a white juror who had a "black ex-boyfriend," warranted the judge's implicit finding that a prima facie showing of improper discriminatory use of peremptory challenges had been made [569-570], and, where the prosecutor failed to articulate on the record any adequate basis for the challenge of the black juror, this court concluded that the empanelment process violated the defendant's State and Federal constitutional rights to be tried by a jury chosen under nondiscriminatory criteria and that a new trial was required [570-572].

At a criminal trial, it was improper for the prosecutor to tell the jury, during closing argument, that they were "the conscience of the community" and to suggest that they would have to answer to the victim for their verdict. [572]

INDICTMENTS found and returned in the Superior Court Department on June 6, 1988.

The cases were tried before *Sandra L. Hamlin*, J.

*Eric Brandt*, Committee for Public Counsel Services, for the defendant.

*Walter Shea*, Assistant District Attorney, for the Commonwealth, submitted a brief.

FINE, J. A black man forced his way into a white woman's Commonwealth Avenue, Boston, apartment, held a knife to her throat causing a slight injury, robbed her of her money, bound and gagged her, and began to assault her sexually, stopping only when she told him she had AIDS. The police

responded as soon as the assailant left, and the victim provided them with a description. The same day she was shown several hundred photographs. None of the photographs she was shown was of the defendant, and the victim did not identify any of the persons depicted as her assailant. A few days later, the victim saw the defendant sitting on the steps of the building next to her apartment house. Something clicked in her mind, and she notified the police that she thought the defendant was her assailant. The police arrested the defendant and brought him to where the victim was waiting. She confirmed that he was the assailant. She also made an in-court identification at trial. Two Boston police officers testified as expert witnesses that a fingerprint, taken from a manila folder that the assailant had touched while in the victim's apartment, matched the defendant's fingerprint.

Seeking reversal of the various convictions arising out of the incident, the defendant makes three contentions on appeal: that there were improprieties of constitutional dimension in the jury empanelment process; that the prosecutor made improper closing argument; and that the judge erred in ruling a proposed defense expert unqualified. Despite the straightforward and strong evidence that the defendant was the individual who committed the serious criminal offenses,[1] we reverse the convictions and order a new trial because of constitutional violations in the course of selecting a jury. We also comment on the prosecutor's improper closing argument. .

1. *Jury empanelment.* The jury empanelment process spanned two days and involved a total of eighty-four people from the jury pool. Of the forty-seven potential jurors in the venire called on the first day, two were black. The judge

---

[1] We do not mean to imply that the jury could not have had a reasonable doubt as to the defendant's guilt based upon the evidence. The defense brought out discrepancies between the description first given by the victim to the police and the defendant's actual appearance and, further, challenged the weight of the fingerprint evidence, given that the fingerprint on the manila folder faded before a photograph was taken for the jury to examine. The jury deliberated for more than one full day and, in the midst of the deliberations, sought reinstruction on reasonable doubt and expert testimony.

asked questions of the group and directed them to approach the bench only if they had a response to any of the questions. A white prospective juror approached the bench and informed the judge that she had an ex-boyfriend who was black. In addition, five prospective jurors, one of whom was black, approached the bench, but not for the purpose of responding to the questions.[2] During individual voir dire, the same black juror answered all questions, appropriately, either "yes" or "no." Of the four other members of the venire who approached the bench for no reason related to the questions asked, three were later excused for cause and one remained. Both of the blacks and the white with a black ex-boyfriend also remained. At the end of the day a total of thirteen prospective jurors were left on the venire. Since it was expected that a jury of sixteen would be chosen, the judge postponed the exercise of peremptory challenges.

The venire called on the second day had three blacks. The defendant moved to have the two venires struck and replaced with new venires more representative of the community, but the judge denied the motion, noting that they were selected randomly by computer. During the group voir dire session on the second day, all three of the black prospective jurors called on that day were removed for cause. Defense counsel immediately renewed her objection to both venires, with the same result.

By the end of the second day of voir dire, a total of twenty-six prospective jurors remained. The seats in the jury box were filled at random from that group, and the judge then called upon the prosecutor to exercise his peremptory challenges. He used three of his sixteen available challenges to strike one of the two black jurors, the white juror with the black ex-boyfriend, and another white juror. When the defendant objected to the removal of the juror with the black ex-boyfriend, the judge responded, "There is no indication that that's the reason the Commonwealth is challenging her. She is a white juror." The defendant then objected to the

---

[2]The black prospective juror came up to the bench because she thought her number had been called.

removal of the black juror. At this point, the judge asked the prosecutor if he wanted to respond. The prosecutor first noted that the juror had come up to the bench for no apparent reason. Defense counsel pointed out that the prosecutor was not challenging a white juror who had acted similarly. The judge then inquired of the prosecutor whether the reason advanced was his sole reason. The prosecutor responded: "[S]he didn't seem to be too clear in her answers, I guess she appeared somewhat flaky in her responses." He then stated "[f]or the record" that he did not object to the other black juror. Defense counsel renewed her objection, noting the racial overtones of the case. The judge disagreed that the case had racial overtones. When defense counsel argued that the prosecutor's statement that the juror appeared "flaky" was not a sufficient reason, the judge said, "[T]he problem with peremptory challenges [is] you don't need any reason." The judge then moved on, the defendant challenged nine of the prospective jurors, and trial commenced with fourteen jurors, thirteen white and one black.

A prosecutor's use of peremptory challenges to remove potential jurors solely because of their race interferes with a defendant's right to be tried by a jury chosen pursuant to nondiscriminatory criteria and violates his rights under art. 12 of the Massachusetts Declaration of Rights, see *Commonwealth* v. *Soares*, 377 Mass. 461, 486, cert. denied, 444 U.S. 881 (1979); *Commonwealth* v. *Harris*, 409 Mass. 461, 464 (1991), and under the equal protection clause of the Fourteenth Amendment to the United States Constitution, see *Batson* v. *Kentucky*, 476 U.S. 79, 82-84 (1986).[3] The procedure for rebutting the presumption of proper use of peremptory challenges is similar under both authorities. First, the defendant must make a prima facie showing that the prosecutor *improperly* removed one or more members of a discrete

[3]The Massachusetts Constitution, in a criminal case, limits defense counsel as well as the prosecutor. See *Commonwealth* v. *Soares*, 377 Mass. at 489 n.35; *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 551-553 (1981). We do not decide whether the conclusions we reach would apply equally to defense counsel, as the conclusions have a separate basis in the United States Constitution.

racial group from the jury. See *id.* at 94, 96; *Commonwealth v. Soares*, 377 Mass. at 488-490. In order to do so, the defendant initially must show that the prosecutor has exercised peremptory challenges to remove from the venire one or more members of a cognizable racial group. "Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' [Citation omitted.] Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson v. Kentucky*, 476 U.S. at 96. In deciding whether the requisite showing has been made, the court may consider patterns in the selection of jurors in the particular case. See *id.* at 93, 96-97. A pattern is not required, however. An inference of impropriety may be drawn on the basis of "the peremptory challenge of a single prospective juror within a protected class." *Commonwealth v. Harris*, 409 Mass. at 465. "A single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions," *Batson v. Kentucky*, 476 U.S. at 95, quoting from *Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266 n.14 (1977).

Once an inference of discrimination has been raised, the burden shifts to the prosecutor to present a race-neutral reason for the challenge. See *Batson v. Kentucky*, 476 U.S. at 97; *Commonwealth v. Soares*, 377 Mass. at 491. Although the reason need not meet the standard for removal for cause, see *Batson v. Kentucky*, 476 U.S. at 97; *Commonwealth v. Soares*, 377 Mass. at 491, general assertions are not sufficient. "[T]he prosecutor must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Batson v. Kentucky*, 476 U.S. at 98 n.20, quoting from *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981).

When the issue of improper peremptory challenges is raised, the trial judge should make a determination, preferably with findings, whether the requisite prima facie showing of impropriety has been made. See *Batson* v. *Kentucky*, 476 U.S. at 96-97; *Commonwealth* v. *Soares*, 377 Mass. at 490; *Stanley* v. *State*, 313 Md. 50, 70 n.11 (1988). If the showing is adequate in the judge's view, he should proceed to determine the sufficiency of any justification advanced for the exercise of the challenge. See *Batson* v. *Kentucky*, 476 U.S. at 98; *Commonwealth* v. *Soares* 377 Mass. at 491; *Jackson* v. *Virginia*, 8 Va. App. 176, 184-186, aff'd on rehearing en banc, 9 Va. App. 169 (1989). An appellate court will accord substantial deference to such determinations made by the trial judge if supported by the record. See *Batson* v. *Kentucky*, 476 U.S. at 98 n.21; *Hernandez* v. *New York*, 111 S.Ct. 1859, 1868-1869 (1991); *United States* v. *Lane*, 866 F.2d 103, 105 (4th Cir. 1989); *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 552 (1981); *Commonwealth* v. *Joyce*, 18 Mass. App. Ct. 417, 423-424 (1984).

In this case, the judge made no explicit finding whether the defendant had established a prima facie case of impropriety. We assume, however, that she made an implicit finding to that effect, as she asked the prosecutor to explain his reason for the challenge. See *Stanley* v. *State*, 313 Md. at 82-83, and cases cited. Our first inquiry, therefore, is whether there was a reasonable basis in the record for such a finding.

If the peremptory challenge of one black juror had left the jury with *no* blacks, a prima facie·case of discrimination would have been established. *Commonwealth* v. *Harris*, 409 Mass. at 465. That is not what happened, however. One black juror was challenged and another remained to serve. The one challenge by itself, therefore, was insufficient to establish a prima facie case. See *United States* v. *Porter*, 831 F.2d 760, 767-768 (8th Cir. 1987); *United States* v. *Ingram*, 839 F.2d 1327, 1330 (8th Cir. 1988). Nonetheless, a determination of prima facie impropriety could still reasonably be made depending on the additional circumstances incident to the challenge of the black juror. See *Batson* v. *Kentucky*, 476

U.S. at 93, 96-97; *Commonwealth* v. *Soares*, 377 Mass. at 490. We consider, therefore, whether there were additional relevant circumstances present in this case.

The prosecutor also challenged a white juror who had a black ex-boyfriend.[4] Although this challenge is not assailable on its own, see *Commonwealth* v. *Lattimore*, 396 Mass. 446, 447 n.3 (1985), it is a circumstance relevant in establishing a prima facie showing of discriminatory intent in challenging the black juror. Further, the interracial sexual aspect of the crime involved is a factor to be considered. See *Commonwealth* v. *Soares*, 377 Mass. at 490; *Commonwealth* v. *Stephens*, 15 Mass. App. Ct. 461, 465 (1983). That factor made it highly possible that racial prejudice would play a part in the jury process. See *Commonwealth* v. *Sanders*, 383 Mass. 637, 640-641 (1981). Compare *Commonwealth* v. *Grice*, 410 Mass. 586, 589-590 (1991). Finally, we consider it relevant that the use of the challenge contributed to reducing the participation of black jurors in the case to virtual "impotence." *Commonwealth* v. *Soares*, 377 Mass. at 488 n.32. See also *United States* v. *David*, 803 F.2d 1567, 1571 (11th Cir. 1986); *United States* v. *Gordon*, 817 F.2d 1538, 1541 (11th Cir. 1987); *United States* v. *Battle*, 836 F.2d 1084, 1086 (8th Cir. 1987); *United States* v. *Clemons*, 843 F.2d 741, 747-748 (3d Cir.), cert. denied, 488 U.S. 835 (1988); *United States* v. *Johnson*, 873 F.2d 1137, 1139-1140 (8th Cir. 1989). The case is close, but we think a reasonable basis existed for a prima facie inference of impropriety in the prosecutor's use of peremptory challenges.[5]

We turn to the explanations given by the prosecutor. The judge followed proper procedure by conducting an inquiry as

---

[4]As the juror mentioned that the ex-boyfriend had been convicted of a criminal offense, it is possible that the prosecutor challenged her for that reason rather than on account of her close friendship with a black person.

[5]Statistical disproportionality was also evident in the prosecutor's use of peremptory challenges, but we do not weigh that in the balance because of the small numbers involved. Nor do we consider, as we might have, see *United States* v. *Lewis*, 837 F.2d 415, 417 (9th Cir. 1988), the reason stated by the prosecutor as a circumstance bearing on the question whether he had a prima facie discriminatory intent.

soon as the issue of discrimination was raised. However, she failed to make any meaningful evaluation of the reasons given, stating "the problem with peremptory challenges [is] you don't need any reason." We consider the reasons stated by the prosecutor, therefore, on the basis of the record and without deference to the trial judge's ruling.[6] See Hopper, *Batson* v. *Kentucky* and the Prosecutorial Peremptory Challenge: Arbitrary and Capricious Equal Protection?, 74 Va. L. Rev. 811, 829-830 (1988). Compare *Jackson* v. *Commonwealth*, 8 Va. App. at 184-185.

The prosecutor first said that he was challenging the black juror because she approached the bench for no reason related to the questions asked. As the defendant contended, and as the judge implicitly recognized, this reason lacked merit because the prosecutor did not also challenge the white juror who came up for no reason and who was not excused. Compare *Commonwealth* v. *Harris*, 409 Mass. at 467, and *United States* v. *Johnson*, 873 F.2d at 1139-1140. Next, the prosecutor stated that the juror seemed unclear in her answers. The voir dire transcripts negate this assertion. Finally, the prosecutor stated that she appeared somewhat "flaky" in her responses. Ordinarily, posture, attitude, and demeanor of a juror during voir dire may constitute a sufficient basis for peremptory removal. See *Commonwealth* v. *Soares*, 377 Mass. at 485 n.27: Hopper, 74 Va. L. Rev. at 828 (collecting cases). But see *Commonwealth* v. *Joyce*, 18 Mass. App. Ct. at 423-424. However, nothing in the record or the judge's remarks supports an assumption that such a basis for challenge existed. The prosecutor bore the burden of articulating, on the record, a basis for the challenge which was not vague and general. "If [such] assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause 'would be but a vain and illusory requirement.' " *Batson* v. *Kentucky*, 476 U.S. at 98, quoting from *Norris* v. *Alabama*,

---

[6]Alternatively, we could remand the case to the trial judge for additional findings. See *United States* v. *Battle*, 836 F.2d at 1086. Given the considerable amount of time that has elapsed since the trial in 1989, we consider that alternative impractical.

294 U.S. 587, 598 (1935). It is true that the prosecutor stated for the record that he had no objection to the other black juror serving. Mere affirmations of good faith, however, are not sufficient. *Batson* v. *Kentucky*, *supra.*

Although the applicable constitutional requirements were, to some degree, still evolving at the time of the trial of this case, we conclude that errors in the jury empanelment process of constitutional dimension require that the defendant be afforded a new trial.

2. *Closing argument.* In the course of addressing discrepancies between the victim's description of the assailant and the defendant's actual appearance, the prosecutor argued as follows: "But is it enough for you as the conscience of this community to say, [victim], we know you got attacked, we know you got stabbed, we know you got robbed, we know you nearly got raped, we know you identified this man in court under oath; but, when you gave the description, you missed by this much, so too bad." Defense counsel immediately objected. The judge replied in open court, "Your objection is overruled, counsel. Sit down." At the close of the argument, at side-bar, defense counsel explained that the basis for her objection was that the argument suggested that the jury would have to answer to the victim for their verdict. The judge responded that, in her view, the argument was proper. She included standard admonitions in her jury charge against reaching a verdict based on sympathy and considering counsel's statements as evidence. However, she made no specific reference to the portion of the prosecutor's argument to which defense counsel had objected, and she failed to tell the jurors that they were not "the conscience of the community," and that they were not accountable to the victim for their verdict.

For the very reason stated by defense counsel at side bar, the argument was improper. See *Commonwealth* v. *Sanchez*, 405 Mass. 369, 375 (1989); *Commonwealth* v. *Harris*, 11 Mass. App. Ct. 165, 176 (1981); *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 753-754 (1986); *Commonwealth* v. *Porter*, 24 Mass. App. Ct. 694, 697-698 (1987); *Common-*

*wealth* v. *Ward*, 28 Mass. App. Ct. 292, 294-296 (1990); *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 537-539 (1991). It was also inappropriate for the prosecutor to tell the jurors that they were "the conscience of the community." They bear no such burden; their role in a trial is limited to finding the facts on the basis of the evidence, dispassionately and impartially. Instead of curing the error, the judge's immediate response to the objection communicated to the jurors her approval of the argument. See *Commonwealth* v. *Cobb*, 374 Mass. 514, 521 (1978); *Commonwealth* v. *Kozec*, 399 Mass. 514, 522 (1987); *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. at 754-755; *Commonwealth* v. *Ward*, 28 Mass. App. Ct. at 296.

The test for determining when a prosecutor's improper closing argument should result in reversal of a conviction is set forth in *Commonwealth* v. *Kozec*, 399 Mass. at 518. Because we are reversing the defendant's conviction for a different reason, we need not consider the only part of that test which might be of assistance to the Commonwealth, whether the error in the circumstances possibly made a difference in the jury's conclusions. See *id.* We note that, on that crucial issue, we have had the benefit of no appellate argument on behalf of the Commonwealth. Indeed, although the defendant's argument concerning the portion of the prosecutor's closing argument which we find improper is spelled out in great detail in his brief and is amply supported by cited precedent, the Commonwealth's appellate brief does not even address the issue.

We find no reversible error in other aspects of the prosecutor's closing argument or in the judge's discretionary ruling on the qualifications of an expert witness offered by the defendant. No discussion of those issues is necessary, however, as they are unlikely to recur in the same form at any retrial of the defendant.

*Judgments reversed.*
*Verdicts set aside.*