COMMONWEALTH *VS.* THOMAS CARLETON.

No. 93-P-484.

Middlesex. November 2, 1993. - February 28, 1994.

Present: JACOBS, GILLERMAN, & PORADA, JJ.

Further appellate review granted, 418 Mass. 1102 (1994).

*Jury and Jurors. Constitutional Law,* Jury. *Practice, Criminal,* Challenge
to jurors, Judicial discretion, Fair trial, Instructions to jury. *Evidence,*
Relevancy and materiality.

This court concluded that improprieties occurred in the jury empanelment
process at the trial of a Roman Catholic priest on a charge of criminal
contempt for violating an injunction prohibiting blocking or in any way
obstructing access to any facility providing abortion counseling or ser-
vices, which may have deprived the defendant of the right to trial by a
jury drawn from a representative cross section of the community, and
that a new trial was required, where the prosecutor failed to give a
clear and reasonably specific explanation for challenges of three pre-
sumably Roman Catholic prospective jurors with Irish surnames; the
presence of other jurors with Irish and Italian last names on the panel
who were eventually seated as jurors was an inadequate justification for
the trial judge's ultimate determination that the prosecutor's use of the
peremptory challenges to exclude the three jurors was not improper.
[142-144]

At the trial of a Roman Catholic priest on a charge of criminal contempt
for violating an injunction prohibiting blocking or in any way ob-
structing access to any facility providing abortion counseling or services
in which the judge, after rejecting the defendant's claim of the prosecu-
tor's impermissible use of peremptory challenges to remove from the
panel Irish or Italian surnamed jurors who were presumed to be Roman
Catholic, refused to call for any further explanation of the prosecutor's
continued use of peremptory challenges to remove prospective jurors
with Irish or Italian surnames from the jury, where the defendant of-
fered insufficient evidence to establish a link between the prospective
juror's surname and that juror's religion, the defendant did not estab-
lish a prima facie case of discrimination, and, therefore, explanation of
the prosecutor's continued use of her peremptory challenges was not
required. [144-145]

There was no merit to a criminal defendant's claim that the judge at trial
mischaracterized the juror's oath as set forth in G. L. c. 278, § 4, by
instructions to the jury which allegedly deprived him of the opportunity
to have the jury nullify the charges against him by voting their con-
sciences. [145]

At a criminal trial, the judge did not abuse her discretion in imposing a
limitation on certain proffered testimony which could reasonably have
been viewed as inflammatory and marginally relevant. [146]

The judge at a criminal trial did not abuse her discretion in excluding
certain evidence on the ground of relevancy. [146-147]

INDICTMENT found and returned in the Superior Court De-
partment on September 1, 1992.

The case was tried before *Wendie I. Gershengorn*, J.

*Dwight G. Duncan* (*Thomas E. Finnerty* with him) for the
defendant.

*Nancy W. Geary*, Assistant Attorney General, for the
Commonwealth.

PORADA, J. The defendant, a Roman Catholic priest, was
convicted by a jury of the Superior Court of criminal con-
tempt for violating an injunction issued by a judge of the
Superior Court prohibiting blocking or in any way ob-
structing access to any facility in the Commonwealth which
provides abortion counseling or services. He received a sen-
tence of two and one-half years to a house of correction.
Among the errors he assigns on appeal is his claim that the
Commonwealth improperly exercised eleven of its twelve pe-
remptory challenges to exclude prospective jurors who were
presumably Roman Catholic. Concluding that there were im-
proprieties in the jury empanelment which may have de-
prived the defendant of the right to trial by a jury drawn
from a representative cross section of the community, *Com-
monwealth* v. *Soares*, 377 Mass. 461, 477-488, cert. denied,
444 U.S. 881 (1979), we reverse the judgment.

We summarize the impanelment process. The judge at the
outset of impanelment simply asked the prospective jurors
collectively a series of questions tailored to the specific facts
of the case and to meet the requirements of G. L. c. 234,
§ 28. After several prospective jurors were excused for
cause, fourteen prospective jurors were seated.[1] The Com-

[1]The panel consisted of the following prospective jurors: Sabatino Ceg-
lio, Elinore Hildebrandt, Deborah Ferrera, John Cantwell, Julie A. Bruno,
Madeline Berry, Angela G. McConaghy, Helen P. Barden, Robert Robin-

monwealth then used five of its twelve peremptory challenges to strike five prospective jurors, all of whom had Irish or Italian sounding surnames.[2] The defendant objected to four[3] of the peremptory challenges by the Commonwealth on the ground that the Commonwealth had established a pattern of striking presumably older Roman Catholics from the jury. The defendant relied solely upon the prospective jurors' surnames, ages, and number of children for his presumption that the prospective jurors were Roman Catholic. Without making an explicit finding that the defendant had established a prima facie case of improper use of peremptory challenges, the judge asked the prosecutor to explain her reasons for challenging the three prospective jurors whom the defendant had identified as possessing Irish surnames.[4] The prosecutor explained that she had challenged the first prospective juror based upon her visual assessment of him and his level of education; the second juror, for the same reasons; and the third juror, based upon her visual assessment of him and the fact that he was widowed. The judge ruled that the challenges were permissible based on the prosecutor's reasons and the number of persons on the panel. To the next peremptory challenge exercised by the Commonwealth, the defendant raised the same objection based on the prospective juror's surname, age, and number of children. This time the judge did not request that the prosecutor state her reasons for the exercise of her challenge. Instead, the judge responded, "I

son, Steven DiClemente, Nancy Ferolito, Francis Kellegher, Gary P. DiNitto, and Todd Pippin.

[2] The challenged prospective jurors were Sabatino Ceglio, John Cantwell, Angela McConaghy, Helen Barden, and Francis Kellegher.

[3] The defendant did not object to the peremptory challenge of prospective juror Helen Barden. After the initial conversation between the judge and defense counsel relating to the prosecutor's use of her peremptory challenges but before the judge called for an explanation for three of the peremptory challenges exercised by the Commonwealth, the prosecutor challenged a sixth prospective juror, Nancy Ferolito.

[4] The judge asked the prosecutor to explain her challenges of prospective jurors John Cantwell, Angela McConaghy, and Francis Kellegher, but did not ask the prosecutor for an explanation of her challenges of prospective jurors Nancy Ferolito and Sabatino Ceglio.

don't find that there is any pattern. There are other persons with Italian surnames, men and women, on this venire that have not been challenged." Following the judge's pronouncement, the defendant objected to each of the five remaining peremptory challenges exercised by the prosecutor.[5] Again, the judge responded that she would not ask the prosecutor to explain her challenges, because "looking at all the other names that are seated, I don't find any pattern."

The defendant argues that the impanelment process was flawed because the trial judge failed to make a meaningful evaluation of the prosecutor's reasons for challenging three of the presumably Roman Catholic prospective jurors with Irish surnames and failed to call for an explanation from the prosecutor for each of the peremptory challenges exercised after the judge's initial determination that the prosecution's exercise of its first six peremptory challenges was proper.

The use of peremptory challenges to exclude prospective jurors solely because of bias presumed to derive from their membership in discrete community groups based on creed or national origin is prohibited by art. 12 of the Massachusetts Declaration of Rights. *Commonwealth* v. *Soares*, 377 Mass. at 488-489. Once the issue of improper peremptory challenges is raised, the trial judge must make a determination, preferably with findings, whether the requisite prima facie showing of impropriety has been made. *Commonwealth* v. *Soares*, 377 Mass. at 490. *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. 564, 569 (1991). While the judge made no explicit finding that the defendant had established a prima facie case of discrimination, we assume that she made an implicit finding to that effect when she asked the prosecutor to explain her challenges to the three prospective jurors with presumably Irish surnames.[6] *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 569.

---

[5]The five remaining prospective jurors challenged by the Commonwealth were Robert E. Dupuis, Luciano Tramontozzi, Mareen Porcella, Kenneth Walsh, and James Connolly.

[6]We assume that the judge based her decision on the national origin of these prospective jurors and not their religion, because she did not call for

We will accord substantial deference to a trial judge's determination that a prima facie showing of discriminatory intent has been made if supported by the record. *Commonwealth* v. *Joyce*, 18 Mass. App. Ct. 417, 423-424 (1984). See also *Batson* v. *Kentucky*, 476 U.S. 79, 98 & n.21 (1986); *Hernandez* v. *New York*, 500 U.S. 352, 364-366 (1991). While there is nothing in the record to indicate the national origin of each of these prospective jurors or their religion, we have recognized that surnames may be relied upon without more to establish national origin. See *Commonwealth* v. *Gagnon*, 16 Mass. App. Ct. 110, 119-121 (1983) (although names are "less than a totally reliable badge of ethnic identity," exclusion of large proportion of prospective jurors with French names was impermissible), *S.C.*, *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 876-878 & n.12 (1984) (because Commonwealth had no opportunity to explain rationale for challenges, record inadequate to find *Soares* violation). See also *Hernandez* v. *New York*, 500 U.S. at 358 (surnames may be used as means of determining jurors' ethnicity). Here, the three challenged prospective jurors — Cantwell, McConaghy, and Kellegher — were the only ones selected with presumably Irish surnames. Although it is a close question, we think this fact provided a rational basis for the judge to conclude that the defendant had shown a pattern of discriminatory intent in the prosecutor's use of peremptory challenges to exclude jurors with Irish surnames. In any event, even if we were to assume that the defendant had not established a prima facie case, since the trial judge ruled on the ultimate question of the prosecutor's use of the peremptory challenge for an impermissible purpose, the preliminary issue whether the defendant had made a prima facie showing is no longer of consequence. See *Hernandez* v. *New York*, 500 U.S. at 359 (where the "prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional

---

an explanation of the prosecutor's other peremptory challenges of prospective jurors whose surnames, apparently, were not Irish.

discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot").

Accordingly, our decision must turn on whether the trial judge's ultimate determination that the peremptory challenges were not used improperly is supported by the record. *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 569. Although substantial deference will be given to the trial judge's decision on this issue, the judge's discretion is not unlimited. *Commonwealth* v. *Harris*, 409 Mass. 461, 468 (1991). In making her determination, the trial judge relied upon the reasons advanced by the prosecutor and the number of prospective jurors remaining unchallenged on the panel. We do not consider those reasons sufficient to dispel the defendant's charge of discriminatory intent. We address those reasons in turn.

Once the trial judge asked the prosecutor to explain her challenges of the three prospective jurors with presumably Irish surnames, the prosecutor bore the burden of articulating on the record a basis that was not vague and general for each challenge. *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 568, 571. The prosecutor justified her first two challenges on the grounds of her visual assessment of the prospective jurors and, according to her, their limited education (high school graduates). Although a prospective juror's attitude, posture, demeanor, or appearance may be a determining factor in the proper exercise of a peremptory challenge, see *Commonwealth* v. *Soares*, 377 Mass. at 485 n.27; *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 571, the prosecutor failed to give a "clear and reasonably specific" explanation for exercising these challenges based on the appearance of the prospective juror. *Batson* v. *Kentucky*, 476 U.S. at 98 n.20. *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 568. As pointed out in the *Batson* case, if vague and general assertions were accepted as rebutting a defendant's prima facie case, no peremptory challenge would be disallowed. *Batson* v. *Kentucky*, 476 U.S. at 98. As to the other reason given in support of these challenges, the prospective jurors' level of education, the prosecutor never explained why

their level of education was important in a trial where the central issue was simply whether the defendant's conduct amounted to a violation of the injunction. The prosecutor's "neutral explanation [must be] related to the particular case to be tried." *Batson* v. *Kentucky*, 476 U.S. at 98. Further, the prosecutor failed to challenge five other jurors seated on the panel who possessed a high school education.[7] Failing to strike other jurors with a similar characteristic is evidence that the reasons offered are a pretext. See *Commonwealth* v. *Harris*, 409 Mass. at 467 (if prosecutor was truly concerned about juror being from Cambridge, he would have challenged a second juror also from Cambridge). Accordingly, the reasons given for the challenge of these two prospective jurors fail to withstand scrutiny.

The reason given for challenging the third prospective juror was even less clear than the reasons advanced for the other two challenges. When asked why she challenged the third prospective juror, the prosecutor responded, "I noticed he was widowed — I'm not quite — I know that I took that into consideration. I'm not prepared to tell the Court exactly how I evaluated that." The prosecutor denied that she was challenging him because of his Irish last name or because she believed he was Catholic. Mere affirmations of good faith, however, are not sufficient. *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 572. Since the prosecutor failed to challenge another prospective juror[8] on the ground she was a widow and failed to establish any reason why being widowed would make a difference in this case, see *Commonwealth* v. *Harris*, 409 Mass. at 467-468; *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 551-552 (1981), we consider the reason advanced to be a pretext.

We turn to the second basis for the judge's determination, the presence of other jurors with Irish and Italian last names on the panel. Even though there were other persons on the panel who had what appeared to be Irish or Italian names

---

[7]Madeline Berry, Gary DiNitto, Todd A. Pippin, Robert Robinson, and Julie Bruno.

[8]Madeline Berry.

and who were eventually seated as jurors, one need not eliminate one hundred percent of the discrete group to achieve an impermissible purpose. *Commonwealth* v. *Soares*, 377 Mass. at 488 n.32. " 'A single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions.' " *Commonwealth* v. *Mathews*, 31 Mass. App. Ct. at 568, quoting from *Batson* v. *Kentucky*, 476 U.S. at 95. Consequently, we deem this ground to be an inadequate justification for the judge's ruling. The challenges should have been disallowed and the prospective jurors seated. Since the errors were of constitutional dimensions, the defendant must be afforded a new trial.[9]

Because of the result reached, we comment only briefly on the defendant's other claim of error pertaining to the impanelment of the jury. After the judge made her ruling rejecting the defendant's claim of the prosecutor's impermissible use of peremptory challenges to remove Irish or Italian jurors from the panel who were presumed to be Roman Catholic, she refused to call for any further explanation of the prosecutor's continued use of peremptory challenges to remove prospective jurors with Irish or Italian surnames and the one known Roman Catholic[10] from the jury (a total of eleven out of twelve peremptory challenges). The judge said she saw no pattern since there were persons with Irish and Italian surnames seated on the jury. However, as noted, a pattern of exclusion can be shown even if not every member of the group in question is excluded. See *Commonwealth* v. *Hutch-*

---

[9]We are mindful that the defendant's argument on appeal is limited to the Commonwealth's allegedly improper use of its peremptory challenges to exclude persons on the basis of religion. Although we are not confined to issues or theories advanced by the parties, see *Commonwealth* v. *Elder*, 389 Mass. 743, 746 (1983), we generally do not consider issues not raised by the parties. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 919 (1975). In this case, we, however, believe that the issue of the Commonwealth's allegedly improper use of peremptory challenges to exclude prospective jurors based on their national origin has been sufficiently raised in the trial court and on appeal for this case to be decided on that basis.

[10]Prospective juror Robert Dupuis had identified himself as a Roman Catholic during a colloquy with the judge.

*inson,* 395 Mass. 568, 571 (1985). Nevertheless, we do not fault the trial judge for failing to call for further explanation. The defendant's challenge was focused primarily upon the exclusion of prospective jurors based on their religion and not their ethnicity. Except for the juror who identified himself as a Roman Catholic, there was nothing in the record other than the surnames of the prospective jurors to establish that they were Roman Catholic. Although we have recognized that surnames may be sufficient to establish ethnicity, we do not consider them sufficiently reliable to establish a person's religion. See *United States* v. *Gelb,* 881 F.2d 1155, 1161-1162 (2d Cir.), cert. denied, 493 U.S. 994 (1989) ("Stereotypical . . . religious characterizations of surnames are unreliable and only tenuous indicia of a jury's makeup"). Where the defendant offered no other evidence to establish a link between the prospective juror's surname and his or her religion,[11] the defendant did not establish a prima facie case of discrimination, and, thus, no explanation of the prosecutor's continued use of her peremptory challenges was warranted.

We discuss briefly the defendant's remaining claims of error that are likely to arise at retrial. The defendant claims that the judge mischaracterized the juror's oath as set forth in G. L. c. 278, § 4, by instructing the jury, "You may not like the law as I am required to give it to you, but each one of you has taken a solemn oath to abide by the law as I tell it to you." The thrust of the defendant's complaint is that this instruction effectively deprived him of the opportunity to have the jury nullify the charges against him by voting their consciences. There is no merit to this claim. This instruction did not interfere with the power of each juror to vote his or her conscience. *Commonwealth* v. *Fernette,* 398 Mass. 658, 670-671 & n.23 (1986). *Commonwealth* v. *Floyd P.,* 415 Mass. 826, 832 n.6 (1993).

---

[11]Although there are inherent risks involved in the procedure, the defendant could have requested an inquiry by the judge to determine whether the prospective jurors were members of the Roman Catholic church. See *Commonwealth* v. *Bourgeois,* 391 Mass. at 878 n.12 (where allegation of *Soares* violations is based on national origin, trial judge permitted to obtain information as to the national origin of the jurors).

The defendant claims that the trial judge erred in preventing him from offering a full explanation for his conduct by refusing to let him testify that his conduct was inspired by the actions of the German resistors to the Holocaust. In a criminal contempt proceeding, due process requires that the defendant have "a reasonable opportunity to meet [the charges] by way of defense or explanation." *Furtado* v. *Furtado*, 380 Mass. 137, 142 (1980). *Commonwealth* v. *Eresian*, 389 Mass. 165, 168 (1983). No Massachusetts case has, however, defined the extent of the defendant's right to explain his conduct. In this case, the defendant was given free rein to describe the formative years of his life, his involvement with peaceful protest, and his intention not to violate the amended permanent injunction and to explain that he was blockading the clinic "to save lives" because "somebody had to do it." The judge did not abuse her discretion in imposing a limitation on proffered testimony which could reasonably be viewed as inflammatory and marginally relevant. Whether to exclude evidence on the ground that its probative value is outweighed by its inflammatory nature is a question best left to the sound discretion of the trial judge. *Commonwealth* v. *Clary*, 388 Mass. 583, 589 (1983). *Commonwealth* v. *Ramos*, 406 Mass. 397, 407 (1990).

The defendant also asserts that he was wrongly precluded from obtaining and offering evidence about abortions scheduled on the day of his arrest. His rationale for admission of this evidence was that he wanted to show that the clinic was not complying with the twenty-four hour waiting period prescribed by G. L. c. 112, § 12S. The judge excluded this evidence on the ground of relevancy. The determination of the relevancy of evidence is committed to the sound discretion of the trial judge. See *Commonwealth* v. *Sneed*, 413 Mass. 387, 396-397 (1992). Assuming without deciding whether § 12S was in effect at the time of the defendant's arrest,[12] the judge

---

[12]The portion of § 12S requiring a twenty-four hour waiting period prior to an abortion was declared unconstitutional in *Planned Parenthood League* v. *Bellotti*, 641 F.2d 1006, 1014-1016 (1st Cir. 1981). The defendant contends it was automatically reinstated when the Supreme Court de-

did not abuse her discretion in excluding this evidence. See *Commonwealth* v. *Brogan*, 415 Mass. 169, 177 n.10 (1993).

*Judgment reversed.*
*Verdict set aside.*

.

.

---

clared such waiting periods to be constitutional in *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U.S. 833 (1992).