Rubin, J.
(dissenting). The court majority errs in concluding that the defendant failed to make out a prima facie claim of gender discrimination in the Commonwealth’s use of its peremptory challenges. Further, to the extent it intimates that the Supreme Judicial Court’s failure to address the Batson claim in the case of Commonwealth v. Wood, 469 Mass. 266 (2014), the appeal of Butler’s codefendant, in which it was not raised or addressed, might have preclusive effect here because of G. L. c. 278, § 33E — a view fleshed out by my concurring colleague — it is also in error, an error that, if raised to the level of a holding, would have broad implications for the criminal law. I *613 therefore respectfully dissent.[1]
1. Batson claim. The defendant raises a claim that he made out a prima facie case of a violation on the basis of gender under Batson v. Kentucky, 476 U.S. 79 (1986). See J.E.B. v. Alabama, 511 U.S. 127 (1994) (extending Batson to cover discrimination on the basis of gender). That is the only claim about empanelment made here by the defendant. The defendant does not argue that there was a fair cross-section problem, so the majority’s conclusion — asserted at the outset of its opinion — that there was no such problem is irrelevant to the defendant’s appeal.
The Batson claim is not a complicated one. After thirty-one jurors had been found indifferent during jury selection, the defendant interposed a Batson objection for discrimination on the basis of gender. At that point, the prosecutor had struck five of the twenty-four women found indifferent, or 20.83 percent. During the same period he had struck five of the seven men found indifferent, or 71.43 percent.
The burden of making out a prima facie case is not “a terribly weighty one.” Commonwealth v. Maldonado, 439 Mass. 460, 463 n.4 (2003). Indeed, the ‘“challenge of a single prospective juror within a protected class could, in some circumstances, constitute a prima facie case of impropriety.” Commonwealth v. Fryar, 414 Mass. 732, 738 (1993), S.C. 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997). The pattern of strikes here suffices to raise an inference that the prosecutor was using peremptory challenges to exclude individuals from the jury because of their sex. The defendant is thus entitled at least to a remand to the trial court to allow the Commonwealth to explain its challenges. See Commonwealth v. Mathews, 31 Mass. App. Ct. 564, 571 n.6 (1991) (stating that, where the judge had not adequately probed the *614 prosecutor’s nondiscriminatory reasons for exercising peremptory strikes, “we could remand the case to the trial judge for additional findings”).[2]
The court majority concludes that no prima facie case of discrimination was made out. Its analysis, however, rests on three different errors.
First, the majority examines both the actions of the Commonwealth after the point of the objection, ante at 603-604, and the final composition of the jury, ante at 604. Neither was known at the time of the objection, and thus neither could have played any role in the decision under review, which is the judge’s determination that the defendant failed to make out a prima facie case of gender discrimination.
The objection at issue, concerning juror no. 100, occurred on the second day of trial after the Commonwealth used its first peremptory challenge of the day to excuse a male juror. This is described in the majority opinion, ante at 603. The actions of the parties during empanelment after that point are, of course, irrelevant. The same is true of the final composition of the jury. To the extent our cases have examined the composition of the jury in determining whether a prima facie case of discrimination has been made out, they have looked only to the composition of the jury at the time of the objection.[3] See Commonwealth v. Sanchez, 79 Mass. App. Ct. 189, 190-192 (2011). Commonwealth v. *615 LeClair, 429 Mass. 313, 321 (1999), cited by the majority, is actually an example of this; the court there cites the final composition of the jury not in support of its affirmance of the judge’s determination that there was no prima facie case of discrimination, but only as evidence that the defendant received a trial before “a fair and impartial jury of his peers,” i.e., that the fair cross-section requirement was met, a different matter and, again, one not raised here. Issa, which the majority also cites, does not discuss the final composition of the jury at all. See Commonwealth v. Issa, 466 Mass. 1, 10-11 (2013). Were we to consider the composition of the jury at the time of the objection, it would undermine the majority’s argument. At that time, the jury contained five women and no men.
Neither subsequent actions nor the final composition of the jury can be relevant to whether a defendant made out a prima facie case. Each individual juror has the right not to be struck for a discriminatory reason. See Foster v. Chatman, 136 S. Ct. 1737, 1747 (2016) (‘“The Constitution forbids striking even a single prospective juror for a discriminatory purpose” [quotation omitted]). Thus, a constitutional violation can occur even if the final jury contains members of the group that was allegedly subjected to discriminatory strikes. See Alvarado v. United States, 497 U.S. 543, 544 (1990) (vacating and remanding where United States conceded that ”[t]he Court of Appeals erred in holding that as long as the petit jury chosen satisfied the Sixth Amendment’s fair-cross-section concept, it need not inquire into the claim that the prosecution had stricken jurors on purely racial grounds”).
To the extent the majority’s discursive discussion of the facts might create an appearance of evenhandedness between the parties, that appearance is misleading. The Commonwealth had, at the time of the objection to juror no. 100, struck an equal number of men and women, five of each. But that was over seventy percent of the men, and only about twenty percent of the women. Likewise, the defendant’s own use of peremptories described in the majority opinion is irrelevant. Because two wrongs do not make a right in this context, nothing one party can do in its use of such challenges licenses the other party to use its own challenges in a discriminatory manner.
Second, the majority speculates about valid reasons for striking some jurors when, because of the trial judge’s error, the Com *616 monwealth was never asked to and never did put forth any nondiscriminatory reason for any of its peremptory challenges. See ante at 603, 604 n.10. We may not speculate about possible nondiscriminatory reasons for peremptory strikes that are not apparent from the record. See Johnson v. California, 545 U.S. 162, 172 (2005) (“The Batson framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process”); Williams v. Lousiana, 136 S. Ct. 2156, 2156-2157 (2016) (Ginsburg, J., concurring in the decision to grant, vacate, and remand, with whom Breyer, Sotomayor, and Kagan, JJ., joined), quoting from Johnson v. California, supra at 173 (It is “improper to ‘rel[y] on judicial speculation to resolve plausible claims of discrimination’ ”). In this case, the prosecutor did argue during voir dire that one of the male potential jurors should have been dismissed for cause because of his views on race, a significant concern of the trial judge in this case, and so that argument may play some role in this court’s analysis. See Batson v. Kentucky, 476 U.S. at 97 (“[T]he prosecutor’s questions and statements during voir dire exantination and in exercising his challenges may support or refute an inference of discriminatory purpose”). See also Commonwealth v. Issa, 466 Mass. at 11 (relying on nondiscriminatory reasons for a strike that were apparent in the voir dire record). However, the majority is simply mistaken in stating that the Commonwealth ever expressed a particular concern about the jurors who were on summer break from college. By the time of the relevant objection, the judge had asked four jurors[4] whether they were on summer break from college. The prosecutor struck all four jurors, two women and two men, without mentioning the fact that they were on summer break. Even if this court is willing to conclude from the silent record that this nongender factor explains these four strikes, the prosecutor still struck three out of five (sixty percent) of the remaining men and three out of twenty-two (13.6 percent) of the remaining women.
Third, the majority fails to engage in one of the most important analyses in determining whether a strike was discriminatory: comparison of similarly situated male and female jurors. See Miller-El v. Dretke, 545 U.S. 231, 241 (2005) (“More powerful than the[] bare statistics, however, are side-by-side comparisons *617 of some black venire panelists who were struck and white panelists allowed to serve”); Sanchez v. Roden, 753 F.3d 279, 302 (1st Cir. 2014), quoting from Aspen v. Bissonnette, 480 F.3d 571, 577 (1st Cir. 2007) (”[W]e take into account ‘whether similarly situated jurors from outside the allegedly targeted group were permitted to serve’ on the jury in ruling on a Batson challenge”). Here, for example, the very first potential juror questioned, juror no. 1, was a female lawyer who had worked at a large law firm, was married to another lawyer who worked at a large law firm, and was going to start working for a Justice of the Supreme Judicial Court in four months. The Commonwealth did not exercise a peremptory challenge. The twenty-second and twenty-third potential jurors questioned, juror no. 79 and juror no. 84, were both male lawyers, one of whom specialized in medical malpractice and the other of whom specialized in trademark law. Juror no. 84, like juror no. 1, was married to a lawyer. The Commonwealth used peremptory strikes on both male lawyers. At the time the prosecutor chose not to strike the female lawyer, he had sixteen peremptory strikes remaining and no jurors had been seated. At the time the prosecutor chose to strike the two male lawyers back-to-back, he had ten peremptory strikes remaining and only three jurors had been seated.[5]
The statistical evidence alone establishes a prima facie case of discrimination. Additional evidence apparent from the record, including a side-by-side comparison of similarly situated jurors, supports it. The majority thus errs in concluding that the facts it raises, which have only limited relevance, establish that the judge did not abuse his discretion. I would not at this point in the proceedings reverse the judgment here, but I would remand the case to allow the Commonwealth to present a gender-neutral explanation for its peremptory challenges to the male prospective jurors. See Sanchez, 753 F.3d at 308.
2. The preclusive effect of § 33E review in the codefendant’s case. The codefendant, Wood, did not raise a Batson claim in his direct appeal to the Supreme Judicial Court, see Commonwealth v. Wood, 469 Mass. 266 (2014), despite litigating the issue in the trial court. Although the Commonwealth does not contend that we are precluded by Wood from addressing the Batson claim *618 here,[6] the court majority, while ultimately reserving the question, may be read to imply that if we could be certain the Supreme Judicial Court had not “overlooked” the Batson issue in its mandatory G. L. c. 278, § 33E, review of Wood’s first-degree murder case for a substantial likelihood of a miscarriage of justice, it might make sense that the court’s silence on the issue would have preclusive effect, barring the defendant from raising the claim here, even though it was never raised on appeal by his codefendant. See ante at note 14. That Wood’s silence on this issue has preclusive effect is the thrust of the opinion of my concurring colleague.
Any such holding would affect the way in which we interpret many, and maybe most, of the Supreme Judicial Court’s myriad decisions in first-degree murder cases, potentially affecting all manner of questions of criminal law. Although I do not fault the logic of my concurring colleague, I do not believe the Supreme Judicial Court intends its silence on an issue in a case like Wood to be given this weight. Indeed, I believe it would violate the fundamental principles of our adversary legal system to accord such precedential weight to the Supreme Judicial Court’s § 33E review of a claim neither raised by a defendant nor explicitly addressed by that court.
The Anglo-American system of law is an adversary one. “Ours is the accusatorial as opposed to the inquisitorial system. Such has been the characteristic of Anglo-American criminal justice since it freed itself from practices borrowed by the Star Chamber from the Continent....” Watts v. Indiana, 338 U.S. 49, 54 (1949) (plurality opinion of Frankfurter, J.). “[Wjithin the framework of our adversary system, the adjudicatory process is most securely founded when it is exercised under the impact of a lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity.” Poe v. Ullman, 367 U.S. 497, 503 (1961). Opposing parties joining issues and providing argument to the court are aspects of adjudication under our judicial system essential both to identifying issues that require adjudication and to ensuring they are determined appropriately. This is one of the reasons that arguments not made before our appellate courts are ordinarily deemed waived, *619 even if they have been raised below. See, e.g., Commonwealth v. Stevenson, 46 Mass. App. Ct. 506, 507 n.3 (1999) (“Although [one of two codefendants] also raised this issue at trial, he has not raised it on appeal; therefore, he has waived his claims regarding this issue”). Indeed, the absence of argument is one of the reasons the Supreme Judicial Court’s advisory opinions issued under Part II, c. 3, art. 2 of the Massachusetts Constitution, as amended by art. 85 of the Amendments, are not given stare decisis effect. See, e.g., Commonwealth v. Welosky, 276 Mass. 398, 400 (1931) (“It has been uniformly and many times held that such opinions, although necessarily the result of judicial examination and deliberation, are advisory in nature, given by the justices as individuals in their capacity as constitutional advisers of the other departments of government and without the aid of arguments, are not adjudications by the court, and do not fall within the doctrine of stare decisis. When the same questions are raised in litigation, the justices then composing the court are bound sedulously to guard against any influence flowing from the previous consideration, to examine the subject anew in the light of arguments presented by parties without reliance upon the views theretofore expressed, and to give the case the most painstaking and impartial study and determination that an adequate appreciation of judicial duty can impel” [emphasis added]).
The Supreme Judicial Court’s § 33E review, mandated by the Legislature, is an exception to the ordinary rules of our adversary adjudicative system. Section 33E, as appearing in St. 1979, c. 346, § 2, provides, “In a capital case ... the entry in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence. Upon such consideration the court may, if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require (a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence.” Section 33E review does not follow the adversary model. It calls upon the court — not the zealous advocate for the defendant — to review the record with an eye toward identifying potential errors and, without adversarial briefing, to decide any questions it finds. It does not involve full-blown litigation. It is designed to serve as a backstop in the case of a conviction of murder in the first degree in light of “the infamy of the crime and the severity of its consequences.” Com *620 monwealth v. Angiulo, 415 Mass. 502, 509 (1993), quoting from Dickerson v. Attorney Gen., 396 Mass. 740, 744 (1986).
It is true that the Supreme Judicial Court utilizes a standard of review (asking whether there has been a “substantial likelihood of a miscarriage of justice”) that is at least formally slightly more favorable to the defendant than we do when we review convictions for unpreserved claims of error (“substantial risk of a miscarriage of justice”). See Commonwealth v. Smith, 460 Mass. 318, 321 n.2 (2011) (“The substantial likelihood of a miscarriage of justice standard that is associated with plenary review under G. L. c. 278, § 33E, ... is more forgiving to a defendant than the substantial risk standard applicable in other criminal cases” [emphasis omitted]). Nonetheless, to treat a decision of the Supreme Judicial Court on § 33E review as binding precedent on all questions that might have been presented in all § 33E cases would ignore the reality that the determination was not the result of an adversary proceeding. Where the issue is one that was neither raised by any party nor mentioned by the court, we cannot tell whether the court’s silence indicates that the issue was seen, evaluated, and found meritless, or missed altogether. Treating that silence as binding precedent on all issues not raised in a case would introduce a fundamental unfairness into our proceedings, particularly where what is at issue is an error that can “never be treated as harmless,” see ante at 612, the very characteristic that the concurring opinion concludes renders the defendant’s claim unreviewable here.
A judge engaged in review of the record is not a lawyer for one of the parties charged with his or her zealous representation. In a case like this, in the absence of briefing by the codefendant’s lawyer, it is not realistic to assume that a judge reviewing the trial record will necessarily find every colorable error of law, nor that he or she will necessarily be completely familiar with each legal issue presented.
Thus, for example, less than three months prior to the Supreme Judicial Court’s decision in Wood, the United States Court of Appeals for the First Circuit in Sanchez v. Roden, 753 F.3d at 300, 308, granted a State prisoner an evidentiary hearing on his Batson claim and concluded that the courts of our Commonwealth had been utilizing a threshold for determining whether an inference of discrimination arises with respect to peremptory challenges that was, as a matter of Federal law, too high. The Sanchez opinion is persuasive, and though our courts are not formally bound by it, it does appear to reflect the appropriate standard.
*621 Yet there is no reason to believe, even if they noticed the Batson issue here, that the justices of the Supreme Judicial Court were even aware of this then recent decision at the time they engaged in their review under § 33E. Although it had been published, no lawyer put it before the court for its consideration.
What Justice Jackson said of the members of the high Court on which he sat could also be said of the justices of our Supreme Judicial Court with respect to the law of our Commonwealth: The justices are “not final because [they] are infallible, but [they] are infallible only because [they] are final.” Brown v. Allen, 344 U.S. 443, 540 (1953) (Jackson, J., concurring in result).
Yet not even the talented justices of our Supreme Judicial Court are omniscient. And, in a circumstance such as this, to hold that their failure sua sponte to find a legal error and to reverse a judgment should be binding on another criminal defendant whose counsel has identified that error and has presented to a reviewing court his client’s claim along with supporting authority would be fundamentally unfair.
Further, I think that it would be inconsistent with the role of the Appeals Court, which was in fact created to assist the Supreme Judicial Court in light of that court’s heavy caseload. Although further guidance from the Supreme Judicial Court is necessary on this question, I find it difficult to believe that it intends its determinations under § 33E of an issue not presented to it, and which it has left unaddressed, to foreclose our consideration of that issue in the first instance when it is properly raised. To the extent, if any, the majority intimates that it does, I respectfully dissent.

The defendant testified on cross-examination that he had reviewed his own prior testimony at the direction of counsel. In closing, the prosecutor said, “Did you find [the defendants’] testimony credible or did you find it rehearsed? Did you find it prepared? Did you find it very informed, having read their transcripts, knowing what questions I was going to ask them? Keep that in mind, ladies and gentlemen, when you look at their' testimony.” There was no objection.
Though the majority does not address it, in the absence of any evidence of coaching, this aspect of the prosecutor’s closing was error. See Commonwealth v. Beauchamp. 424 Mass. 682, 691 (1997) (“the prosecutor may not elicit evidence of . . . the discussions the defendant had with his attorney to argue that these were evidence that the defendant fabricated his story”). Nonetheless, because I conclude that the error did not create a substantial risk of a miscarriage of justice, I do not think it requires reversal.

See Sanchez v. Roden, 753 F.3d 279, 308 (1st Cir. 2014) (remanding case for evidentiary hearing after finding prima facie case of Batson violation). See also United States v. Battle, 836 F.2d 1084, 1086 (8th Cir. 1987) (same); United States v. Horsley, 864 F.2d 1543, 1546 (11th Cir. 1989) (same); Jones v. West, 555 F.3d 90, 102 (2d Cir. 2009) (same). The alternative would be to order a new trial. See Commonwealth v. Long, 419 Mass. 798, 807 (1995). See also Commonwealth v. Issa, 466 Mass. 1, 11 n.14 (2013) (“Where, as here, a judge fails to find a prima facie case or otherwise require the prosecutor to provide an explanation, the record on appeal includes no explanation of the prosecutor’s reasons for the challenge, the defendant is not given an opportunity to reply to the explanation, and the judge does not make the required findings as to the adequacy and genuineness of the prosecutor’s explanation. Therefore, where a judge abuses his or her discretion by failing to find a prima facie case, the error is unlikely to be harmless. . . . Consequently, when a defendant claims that a prosecutor’s peremptory challenge of a prospective juror is motivated by discriminatory intent, we urge judges to think long and hard before they decide to require no explanation from the prosecutor for the challenge and make no findings of fact”).

We note that on Federal habeas review, the United States Court of Appeals for the First Circuit recently deemed this court’s overreliance on the composition of the jury at the time of the objection in that very case “objectively *615 unreasonable in light of clearly established federal law.” Sanchez v. Roden, 753 F.3d at 300.

Including the man whom the prosecutor argued should be dismissed for cause.

In addition, the record on appeal contains no relevant information about juror no. 100, the man whose strike prompted the gender-based Batson objection. The prosecutor failed to strike a number of female jurors about whom there is also little information in the record (e.g., jurors nos. 15, 25, 53, 88, 96, and 97).

The issue was raised sua sponte by the panel at oral argument. At his request, the defendant was permitted to submit a postargument letter responding to the panel’s questions. The Commonwealth did not submit a postargument letter on this subject.